# CHARLESTON.

JOSEPH CAMBRIA, *et al* v. CARL G. BACHMANN *et al.*

Submitted March 13, 1923.   Decided March 27, 1923.

1. CONSTITUTIONAL LAW—INJUNCTION—*Equity Without Jurisdiction to Enjoin Arrest of Owner of Gambling Device on*

*Seizure of Property; Constitutional Provision Relating to Jury Trial and Depriving one of Liberty or Property Without Due Process, Inapplicable Where Property Seized is Contraband.*

1.   Equity has no jurisdiction as incident to the protection of the property to enjoin arrest of the owner or the seizure of his property, with or without warrant, employed by him as a gambling device in violation of section 1 of chapterr 151 of the Code. Such seizure of the property is a proceeding *in rem,* and being contraband, the provisions of the constitution relating to trial by jury and depriving one of his liberty or property without due process of law are inapplicable.   (p. 472).

2.   GAMING—*Previous Adjudication of Character of Gambling Machine not Necessary Before Warrant for Arrest of Owner and Seizure of Property.*

2.   It is not necessary · that there should be a previous adjudication as to the nature and character of a machine operated by the owner to whom a license has been issued to operate a slot machine before suing out a warrant for his arrest and the seizure of such property, which the prosecutor complains is being operated in violation of said section 1 of chapter 151 of the Code.   (p. 472).

3.   SAME—*Where Gambling Property Susceptible to no Other Use. Sole Remedy of State is to Destroy Property or Restore it to Owner.*

3.   The statute providing for the arrest of the owner and the seizure of property charged in the warrant to be employed contrary to the statute also provides for the trial of the accused, and if found guilty, for the destruction of the property, or if not, for the restoration of the same to the owner; and where such property is susceptible of no other use, this is the sole remedy of the State and the accused to determine the rights of the accused with respect to such property.   (p. 472).

4.   MANDAMUS—*Opinion of Judges in Mandamus not Adjudication Binding Parties.*

4.   A proceeding by· mandamus by the owner of such property against the licensing authorities to compel them to issue him a license to operate a slot machine, in which there was no process upon the petition, and no return nor issue joined by defendants, and no record made thereof, but an opinion of one of the judges announced, will not amount to an adjudication binding the parties nor protect the owner against

arrest or seizure of his property operated contrary to the provisions of the statute. (p. 472).

5. INJUNCTION—*Equity Will Not Enjoin Arrest of Owner, Nor Seizure of Contraband Property.*

5. Because of the character of such contraband property, equity will not enjoin the arrest of the owner or the seizure of his property, and the principles of Block v. Crockett, 61 W. Va. 421, and other cases referred to in the opinion, are inapplicable. (p. 473).

6. QUO WARRANTO—*Does not Extend to Proceedings Against Licensee to License Slot Machines.*

6. The writ of *quo warranto*, provided by section 6 of chapter 109 of the Code, does not by proper construction extend to proceedings against licensees having licenses to operate slot machines issued under the revenue laws of the State, the arrest and trial of the owner for violating the criminal statute and the proceeding provided by section 34 of chapter 32 Barnes' Code 1923, being adequate for the protection of the State and the accused.    Moreover, by section 1 (r) of said chapter 32, no license to operate such a machine will protect the owner in the unlawful employment thereof. (p. 473).

7. APPEAL AND ERROR—*Contempt—Where Appeal was Improvidently Allowed From a Void Decree There was no Contempt Disregarding Supersedeas; Violation of Void Order Hela not Contempt.*

7. Where on bill and answer the circuit court has declined jurisdiction and dissolved a preliminary injunction enjoining public officers from proceeding against the owner and the seizure of his property by criminal process, this court should not take jurisdiction by appeal and supersedeas to review such decree and restore such preliminary injunction, which was void for want of jurisdiction; and the public officers can not be held guilty of contempt for disregarding such void decree of the circuit court. (p. 473).

8. APPEAL AND ERROR—*Violation of Supersedeas Held not Contempt.*

8. Properly construed the preliminary injunction in this case did not enjoin respondents from arresting the relators for a violation of the statute in operating their slot machines; and in so far as it undertook to enjoin seizure of their property without warrant of law, the order for the reasons

stated was void; and for the subsequent arrests upon warrants and the seizure of relators' property by lawful process respondents were not guilty of any contempt of the appellate process of this court for which under the circumstances they should be punished. An injunction of this character must be interpreted in the light of the pleadings.

Petition of Joseph Cambria and others against Carl G. Bachmann and another. On rule to show cause why defendants should not be punished · for contempt.

*Rule discharged, and petition dismissed.* ·

*J. Bernard Handlan, G. Alan Garden* and *John J. Coniff,* and *Poffenbarger* Blue & Dayton, *for petitioners.*

*Carl G. Bachmann* and *Carl O. Schmidt,* and *W. C. Revercomb, for respondents.*

MILLER, PRESIDENT:

Respondents Carl G. Bachmann, prosecuting attorney of Ohio County, and Harry T. Clouse, sheriff of said county, have been ruled before us upon the petition of Joseph Cambria and others, to show cause why they should not be punished as for a contempt of this court for alleged violation of the process, awarded February 10, 1923, of appeal from and supersedeas to a decree of the circuit court of said county dissolving an injunction in the chancery cause of said Cambria and others against respondents and Fred H. Frazier, chief of police of the City of Wheeling.

The grounds upon which the preliminary injunction was awarded, as alleged in the bill, in substance were that relators were the owners of some eighty-five machines known and designated as automatic machines or devices for vending chewing gum and checks commonly known as trade checks, to operate which they had obtained licenses from the State of West Virginia and the City of Wheeling pursuant to statute and the ordinances of said city; that the aforesaid licenses were actually issued to them; that petitioners had applied to Honorable J. B. Sommerville, judge of said court, to compel the city clerk to issue said licenses, upon which application a full hearing was had as to whether said machines were gambling devices, and when one of said machines was exhibited to

the court in the presence of the prosecuting attorney and the city solicitor, and when it was agreed that what was alleged concerning said machines and the operation thereof was true; that no answer was made to said petition; that in and thereon in an opinion delivered the court determined that the petitioners were entitled to licenses to operate said machines as applied for; that thereafter petitioners invested large sums of money in the purchase of said machines, and in installing the same; that without formality of judgment by the court upon the record there was issued to plaintiffs by the City of Wheeling and the State of West Virginia licenses to operate said machines; that after petitioners had so purchased said machines and installed them, the said Carl G. Bachmann, prosecuting attorney, Harry T. Clouse, sheriff, and Fred H. Frazier, chief of police, and their deputies, agents and employees, pretending that said machines were gambling devices, gave notice to plaintiffs to remove them from the places where they had been installed by midnight of February 2, 1923, or that they would by force if necessary confiscate them and prevent their operation and remove them from the places where they had been so installed.

The allegations of the bill most material here were: First, that these orders of defendants that said machines should be taken by force if necessary were without any *authority* or *warrant of law* or *any complaint against the complainants* or those in whose possession or in whose places of business the machines were located, and that the complainants were advised and charged that said officers would carry out said orders unless restrained by an order of the court: Second, that the business done by the said machines was a legitimate business, authorized by the laws of the State of West Virginia and the ordinances of the City of Wheeling, and that the confiscation of their property if carried out would work irreparable injury to complainants, for which the law provided no adequate remedy; that the method of confiscation so proposed, as plaintiffs were advised, was a high-handed and unheard of method, not contemplated by law; that after being served with notice of the application for said injunction, defendant Bachmann directed the officers to go ahead

and confiscate any machine found in any place and to arrest the proprietor of the place and put him in jail, thereby to prevent the operation of said machines *without any authority of law* and *without any offense being committed by the complainants* or those in whose places of business said machines were located.

The prayer of the bill, in accordance with the injunction order therein recited, was that a temporary injunction be issued against said defendants and each of them, their deputies, agents, servants and employees, from in any manner confiscating and removing said machines or interfering with the operation thereof until the further order of the court, and that upon a final hearing said injunction be made permanent.

The defendants answered the bill, and as they claim, and as the circuit court undoubtedly concluded, fully denied all material allegations of the bill, and moved the court to dissolve the injunction; and upon the hearing of said motion, upon the bill and exhibits therewith, and the answers and exhibits therewith, the court, on February 5, 1923, by the decree appealed from, adjudged, ordered and decreed that the said temporary injunction be and the same was thereby wholly dissolved.

The plaintiffs in said bill, the relators in the present petition, contend that respondents' answers to said bill were not denials, but constituted admissions of the facts alleged and that the other allegations thereof relied on, to the effect that said machines were gambling devices, which could not be legally licensed by state or municipal authorities, a mixed question of law and fact, were affirmative in nature, and as to which facts the plaintiffs were entitled to protection by virtue of their licenses until the character of said machines could be determined by the proper tribunal, and that the burden of proof was upon defendants, and as to which defendants and respondents offered no proof.

The petition for the present rule alleges that, on February 20, 1923, after the writ of appeal and supersedeas of this court was allowed, respondents Bachmann and Clouse, disregarding and in violation and contempt of said process rein-

stating said injunction, interfered with and stopped the operation of four of said gum vending machines, and seized and took them into their possession and removed them from the places in which they were and from the custody and control of those lawfully in possession thereof, one from the place of business of Roy Ruttencutter, another from the place of business of Harry Katsadoras, another from the place of business of William Bilo, and another from the place of business of Dave Bohrer, all in the City of Wheeling and County of Ohio, and as to the machines in the possession of said Ruttencutter, Katsadoras and Bilo pursuant to warrants issued by John W. Kindelberger, justice of the peace, upon complaints sworn to and filed by respondent Bachmann as prosecuting attorney, and as to the machine in the possession of Dave Bohrer, without any warrant or process of any kind, but on the theory that an offense had been committed in the presence of said sheriff, and that they have thereby stopped the operation of all other like machines of relators.

To the rule against them for contempt respondents Bachmann and Clouse have now appeared and joined in a motion to quash the rule and filed their respective answers thereto. The grounds of their motion to quash are: (1) That the circuit court was without jurisdiction to restrain them from proceeding by valid search and seizure warrants to arrest the persons operating said machines and to seize and take them into their possession; (2) That as to the machine on the premises of Dave Bohrer, they were not enjoined from seizing it, either with or without a warrant, because it was not included in the list of machines appended to the bill for the temporary injunction.

The answers of both respondents admit the proceedings upon the bill and answer in said circuit court, and the award by this court of the appeal from and supersedeas to the order dissolving said injunction; and they further admit that since the process from this court on February 10, 1923, respondent Carl Bachmann made complaint under oath before a justice of the peace in Ohio County and obtained warrants for the arrest of said Ruttencutter, Katsadoras and Bilo, and for the seizure of the machines in their possession, alleged

by respondents in their answers to be gambling devices, and directed said Clouse to enter their premises and arrest those in possession of said machines and to take the machines into his possession, to be used as evidence by said Bachmann as prosecuting attorney on the trial of indictments found by the grand jury against the keepers thereof on March 5, 1923; but respondent Bachmann denies that he had interfered with or stopped the operation of said machines so seized and took them into his possession in disregard of, or in violation disobedience or contempt of the injunction or of the process of this court, for the several reasons assigned; (1) that said injunction was designed and intended only to prohibit him from *illegally and unlawfully confiscating or removing said machines or interfering with the operation thereof,* and was not intended to prohibit or restrain him, as a public officer charged with the duty of enforcing the criminal laws of the state, from proceeding by valid warrants to arrest violators of the statute and to seize the implements used by them in the violation thereof; (2) that it was distinctly understood both by respondents and by counsel representing relators that the injunction was not designed to prohibit respondents from proceeding by valid warrants against the keepers and exhibitors of said machines, as evidenced by a certified copy of the remarks and comments of the court thereon filed with his return; (3) that as shown by the certified copy of said colloquium, the judges who presided announced it as their intention that the injunction should have no other effect than to restrain and prohibit respondents from proceeding unlawfully and without proper warrants to confiscate and remove or interfere with the operation of said machines, and expressly stated to respondents that said injunction did not restrain them from arresting such persons and from seizing said machines according to law, and that it was not unlawful for him to cause the arrest of the persons keeping such machines or to seize the same by proper search and seizure warrants; and in support thereof respondent Bachmann exhibited affidavits of Charles H. Dowler, city manager of the City of Wheeling, Carl C. Schmidt, city solicitor, and Louis E. Shrader, court reporter.

Respondent Bachmann in his return reaffirms the proposition stated in his motion to quash, that the circuit court was without jurisdiction to restrain him from proceeding lawfully by valid warrants to arrest the operators of said machines and to take them by search and seizure warrants. He further says that no licenses were ever issued by the State to complainant, to operate, keep and exhibit machines such as those described by relators in their petition for the rule, in violation of section 1, chapter 151 of the Code, and that no such licenses to operate slot machines will protect relators in the operation of gambling devices, such as the machines in qestion are alleged to be.

And respecting the proceeding by mandamus alleged in relators' bill, it is averred in the return that the circuit court did not adjudicate thereon the question of the legality or illegality of said machines; that said court had no jurisdiction to determine such question in a mandamus proceeding, as shown by the affidavit of the clerk of said court exhibited with the return. The return further alleges that said machines were taken under lawful process, issued in accordance with law and upon proper complaint by him. He further avers that he acted in good faith in enforcing the criminal laws of the State, and disclaims any intention to violate any decree of the circuit court or the process of this court; and that if in the opinion of this court he has misinterpreted the intent of the circuit court or the supersedeas of this court, he makes due apology and professes his willingness to make such amends as may be required of him on this hearing. The further answer of respondent Clouse is substantially the same as the answer of the prosecuting attorney.

The first question which is always addressed to a court is that of its jurisdiction, and this is the first question presented by respondents' motion to quash the rule. Did the circuit court have jurisdiction to enjoin respondents as public officers from proceeding against relators with or without warrants for the arrest of their persons or the seizure of their property?

We observe by reference to the literal terms of the injunction, that it did not restrain respondents from criminal prose-

cutions, but only from interfering with the operation of the machines, and unless "interfering with the operation thereof," by implication did so, they were not so inhibited by the injunction order. Criminal prosecutions might well go on without seizure of property, pursuant to section 1, chapter 151 of the Code, and this section authorizes, as does chapter 155, the seizure of such apparatus or implements, and the destruction thereof if the defendant be found guilty; and generally the practice seems to be, in obtaining warrants for the arrest of such offenders, to also sue out warrants for the seizure of the contraband property, as a preventive measure, and that it may be used as evidence on the trial of the accused, and be within the jurisdiction of the court to order its destruction, if on the trial of the accused it be of such character which the statute prescribes shall be destroyed.

The authorities hold that the seizure of such property is not violative of the constitutional provision against depriving one of his property without due process of law. *Woods. v. Cottrell,* 55 W. Va. 476.

In *Kite* v. *People,* 32 Colo. 5, it was decided that a proceeding under a similar statute of Colorado was a proceeding *in rem,* and that the constitutional right of trial by jury is not thereby infringed, nor is the provision of the constitution that no person shall be deprived of life, liberty or property without due process of law thereby broken.

The reason for this rule, particularly applicable to gaming statutes, is that contraband property of this character is not protected by the constitution, and property which is not susceptible for any but unlawful use may be seized by public officers summarily on proper warrant. *Mullen* v. *Mosely, Sheriff,* (Idaho), 12 L.R.A. (N.S.) 394. According to the contention of respondents, there having been no adjudication nor any showing that the machines here involved were capable of any other than for gambling purposes, they might be seized and held as a preventive measure and for evidence. Of course, if on the trial of the accused they be found not guilty and the machines not to be gambling de-

vices, as provided by the statute, the propery, by section 4 of chapter 155 of the Code, must be restored to the owners.

In the case of *Wagner* v. *Upshur*, 95 Md. 519, 93 A. S. R. 412, which was on second appeal, it was held that if the property may be used for a legal as well as illegal purposes, the presumption can not be indulged that the owner intended to use it for the illegal purposes, unless it is first established that the article was procured or held for illegal purposes; and that the fact can not be so established except by purceedings in a court of criminal jurisdiction. Relators of course contended in the circuit court, as here on this rule, that the machines seized were not gambling devices; that that fact was established by adjudication, or what amounted to an adjudication, upon mandamus in the circuit court; but we do not think that a proceeding of which no record appears, and showing at most but a moot inquiry, can be given a place of formal adjudication binding the parties.

The proposition relied on, that the injunctive process of a court of equity may be made use of by the owners of such property to enjoin criminal proceedings as incident to equity jurisdiction to protect it, and prevent its confiscation or the operation thereof, predicated upon our decisions in *Block* v. *Crockett*, 61 W. Va. 421; *Fellows* v. *City of Charleston*, 62 W. Va. 665; *Flaherty* v. *Fleming*, 58 W. Va. 669; *C. & O. Ry. Co.* v. *Avis and Conley*, 67 W. V. 129, can not be successfully maintained.

Another proposition of relators' counsel is that having obtained licenses, they are protected as such licensees until some remedy is pursued by state or municipality to determine the character of the machines; that the possession of such licenses protects the owner until the legality or illegality of their machines have been so determined, and that *quo warranto*, provided for by section 6 of chapter 109 of the Code, or some other adequate remedy is pursued. The first reply to this proposition is that the statute itself, section 1 (r), chapter 32 Code, provides that "no slot machine or other automatic device with respect to which, or its operation, service or supplies, there is any element of chance, (being a gaming table, within the meaning of section one, of chapter

one hundred and fifty-one of the code), shall be protected by any license." In *Cain* v. *McHarry*, 65 Ky. (2 Bush) 263, it was held that a charter to operate a race course did not legalize betting and thereby the misuse of the franchise or privilege. In *Georgia Athletic Club* v. *Atlanta*, 139 Ga. 176, it was held with respect to locker licenses issued pursuant to a municipal ordinance, that such licenses would not author-ize a court of equity to enjoin criminal prosecutions under the ordinance, irrespective of the question of the constitution-ality thereof.

Our statute, section 34, chapter 32 of the Code, provides a summary remedy for revoking all licenses and privileges of this character, but as these licenses are not granted for the operation of any particular slot machine but authorize the operation of slot machines not inhibited as a gambling device, that remedy has not been pursued. As the law au-thorizing the licensing of such machines is a revenue measure and such license does not protect the operation of a gambling machine, it is unnecessary for the protection of the public to resort to this remedy before proceeding criminally to punish the offenders and confiscate their property.

It is contended, however, by relators that *quo warranto* under the facts and circumstances of this case is the proper remedy, and that it must be pursued and an adjudication had in advance of the seizure of the machines. It is provided by section 6 of chapter 109 of the Code, that the writ of *quo warranto* may be prosecuted in the name of the State at the instance of the attorney general or prosecuting attorney of any county in certain enumerated cases, the second of which is, "Against a person for the misuse or nonuse of a privilege and franchise conferred upon him by or in pur-suance of law." It is conceded that neither of the other three specifications cover cases of this kind. Number 1 pertains to the misuse or nonuse of corporate privileges or franchises not conferred by law, or obtained for a fraudulent purpose or for a purpose not authorized by law. Number 3 relates to persons acting as corporations without authority of law. Number 4 relates to any person who shall intrude into or usurp any public office. At common law the writ of *quo*

*warranto* was available only to inquire into the authority of
a person to exercise some prerogative of the crown which
he could not do without a charter or license, as to hold pub-
lic office or to exercise some other power under the crown.
22 R. C. L. p. 659. It seems never to have been used in in-
quiries under a revenue law, and where but for such law a
right or business might be exercised or pursued by any citi-
zen without a license. See License Tax Cases, 72 U. S. 462.
The cases cited and relied on by relators seem to support this
view rather than the proposition for which they are cited.
Of course the office of the writ might be extended by statute
to cover cases of this kind, but we do not think sub-section 2
of section 6, chapter 109, was so extended. Section 34, chap-
ter 32, already referred to, provides a summary remedy for
revoking licenses, by the licensing authority. And, as we have
observed, the statute on which the prosecutions complained
of are founded, contemplates a trial of the right and the
character of the apparatus, whether a lawful or unlawful in-
strument, by the jury in the criminal prosecution. Counsel
for relators cite some Illinois cases, where the statute as con-
strued by the appellate court of that state has extended the
office of the writ of *quo warranto* or information in the nature
of *quo warranto* to an inquiry into licenses to operate dram
shops. *Handy* v. *People,* 29 Ill. App. 99; *Swarth* v. *People,*
109 Ill. 621; *Matthews* v. *People,* 159 Ill. 399; *Martens* v.
*People,* 186 Ill. 314.

To hold, as we now do, that the circuit court had no juris-
diction to award the injunction in this case, the question
arises upon the present rule for contempt, what jurisdiction
had we to award an appeal from and supersedeas to the de-
cree below dissolving the injunction upon the bill and answer,
and whether the acts of the public officers complained of and
cited before us on the rule for contempt may be regarded
as in contempt of the appellate process of this court. If in
the place of dissolving the injunction, the circuit court had
entered a decree perpetuating it, we might possibly have
taken jurisdiction to correct its error upon appeal, but the
remedy by prohibition would also be available. We have in
a number of cases prohibited courts of inferior jurisdiction

from enforcing void decrees. Section 1, chapter 110 Barnes' Code Anno. 1923, and cases cited in notes. But as we hold the circuit court was without jurisdiction to enjoin the criminal proceedings begun and continued, and upon bill and answer declined jurisdiction and dissolved the injunction, it committed no error reviewable on appeal.

Assuming that the injunction was broad enough in terms to cover prosecution of the offenses charged, may we lawfully hold respondents in contempt of our process? We are inclined to hold that we ought not to do so; that the appeal was perhaps improvidently awarded, and that upon motion in due course it ought to be dismissed. As a general proposition there can be no contempt of a void judgment or decree as being in excess of judicial authority. *Ruhl* v. *Ruhl*, 24 W. Va. 279; *Swinburn* v. *Smith*, 15 W. Va. 483; *Powhatan C. & C. Co.* v. *Ritz*, 60 W. Va. 395; *Laidley* v. *Jasper*, 49 W. Va. 526; *Trudgeon* v. *Blair*, 39 W. Va. 704; *Hebb* v. *County Court*, 48 W. Va. 279.

But assuming the jurisdiction of this court to award the appeal and supersedeas, were respondents by their subsequent proceedings guilty of any contempt of the process of this court? We are of opinion to hold that they were not. The order of injunction, as we have already held, did not enjoin such criminal prosecutions, and respondents' return, taken in conjunction with the bill and exhibits, we think shows quite clearly, when read in the light of the pleadings and proofs in the case, that there was no intention to enjoin and that a fair interpretation of the decree will not justify the conclusion that respondents were enjoined from enforcing the criminal laws of the state in respect to slot machines or other gambling devices. An injunction of this character must necessarily be interpreted in the light of the pleadings. *McEldowney* v. *Lowther*, 49 W. Va. 348; *Powhatan C. & C. Co.* v. *Ritz, supra; Bettman* v. *Harness*, 42 W. Va. 433.

For the foregoing reasons we are of opinion to discharge the rule with costs to respondents against relators.

*Rule discharged.*