## People of the State of Illinois, Appellee, v. One Pinball Machine Owned by Henry Fox, Appellant.

### Gen. No. 9,775.

the May term, 1942. Heard in this court at Opinion filed September 17, 1942. Rehearing denied December 3, 1942.

GEORGE T. LIDDELL, of Rockford, for appellant.

MAX A. WESTON, State's Attorney, and WILLIAM H. GATES, Assistant State's Attorney, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This is an appeal from an order of the county court of Winnebago county ordering the destruction of a certain pinball machine as a gambling device. The machine was in the possession of Henry Fox and was summarily seized in his place of business in the city of Rockford by deputy sheriffs after one of them had played it. After the seizure, the State's Attorney filed a petition alleging, among other things, that Paul Margason, a deputy sheriff, on October 20, 1941, entered the place of business of Henry Fox located in

Rockford, and known as the Sportland Amusement Arcade, and found therein a gambling device in which he hazarded and played money in the machine in return for which he received certain free games; that the machine was a gambling device *per se,* commonly known as a pinball machine; that five balls may be played for five cents and that the player is not in control of the balls while they are in motion and that the machine was seized in pursuance of the law and is now in custody of the sheriff. The petition prayed for an order authorizing its destruction. Henry Fox filed an answer admitting that he was the owner of the machine, denied that it is a gambling device, specifically denied that it is such *per se* and denied that its seizure was pursuant to law. In his answer he avered that the machine was an amusement device and a mechanical game for amusement only and prayed that it may be ordered returned to him and the petition dismissed.

Upon the hearing the machine was produced in open court and it was stipulated that it is a frame table about two and one-half feet high, approximately four feet long and two feet wide, with a glass cover, approximately parallel with the floor, the rear end being slightly elevated; that over and above the front end and perpendicular to the table is a case approximately two feet high, eight inches thick, of the same width as the table, having a glass frame with a series of numbers and figures which light up at various occasions; that on the surface of the table under the glass top are a series of colored glass objects, bearing numbers one through ten, which light at times; that there are also five similar white objects, and a series of rubber bumpers; that there is a slot or groove on the right hand side of the table from which balls may be propelled out onto the center of the table so that they hit the various bumpers and lights, finally coming to rest at a large groove near the lower end of the machine; that when a coin is inserted in a sliding injecting device the

machine is ready for operation; that five balls are played; and that the machine bears a license amusement tag of the city of Rockford.

An instruction card was read into evidence, which reads: "Choose winning round by turning black knob in front of cabinet. After lighting all colored bumpers from 1 to 10 the player may light the white bumpers in rotation begining with 11, then 12, etc. For lighting all bumpers player receives 20 or more points. When bumper selected for winning round has been lit player receives skill points as indicated. All lit white bumpers hit thereafter also give skill points. All lit colored bumpers score 1000. Player receives 1 skill point for 46,000." Down the sides are the words: "5 cents 5 balls." It was further stipulated that where the instruction card refers to skill points that "skill points" means registering of the free game.

The deputy who played the machine was the only witness who testified. He described the mechanical features of the machine and the way each ball is placed in front of the propelling plunger and continued: "What happens depends upon how you regulate the plunger. You can regulate the plunger to shoot for the one, two or three. By regulate I mean pull it back a certain distance for certain lights. Each time the ball hits the bumper the light lights up and there is 1000 points each time those particular bumpers are hit." The following questions were then asked and answered: Q. "Can you direct the ball at any particular object?" A. "You can." Q. "Can you be certain what object it is going to hit?" A. "Almost certain, depending upon the way you use the plunger." He then testified that he played the machine about thirty-five times, using a nickel each time; that about the thirtieth or thirty-second time he struck all the lights on the machine (eleven) required for free plays and four free plays were automatically registered by the lighted number "four" on the back board; that he then

played those extra games without putting in any more nickels; that after doing so he put in two more nickels and got four additional free games; that the plunger that starts the ball on its course operates on a spring; that the distance it is pulled back determines the force with which the ball is struck by the plunger and this force in turn determines the speed at which the ball travels; that just above the plunger is an opening with a mark indicating various distances the plunger may be pulled back before it is released; that when he said he had some control over the ball, he meant he controlled it by the tension he put on the spring, by the distance he pulled it back and that the machine does not release slugs or tokens and that he received nothing in the operation of the machine except the privilege of replaying without paying additional nickels, the number of free games being automatically registered and when registered all that is necessary to again play the five balls is to push the slot in where the original coin was inserted.

The proceeding is under section 2 of "An Act to prohibit the use of clock, tape, slot or other machines or devices for gambling purposes." (Ill. Rev. Stat. 1941, ch. 38, par. 342 [Jones Ill. Stats. Ann. 37.272]) which provides:

"Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found."

Appellant's claim that this section is unconstitutional as providing no mode of judicial investigation into the question of whether seized property is a gambling device within the meaning of the statute cannot be entertained. It was not raised in the trial court and this court has no jurisdiction of the question (*People v.*

*Reed,* 287 Ill. 606; *People v. Powers,* 283 Ill. 438).
Furthermore the Supreme Court has held it is not
unconstitutional for the reason assigned. (*Bobel v.
People,* 173 Ill. 19; *Frost v. People,* 193 Ill. 635.) The
claim that the trial court was without jurisdiction will
be considered later herein.

In 24 Am. Jur. "Gaming and Prize Contests," sec.
35 at pages 422, 423 it is said that there are so many
kinds of slot machines differing so much in construc-
tion and operation and used for such varied purposes
that it is difficult to lay down any general rule fixing
their status with reference to the question of gaming
or gambling; that a slot machine which in return for
a coin deposited therein, dispenses merchandise of the
value of such coin, accompanied at uncertain and oc-
casional intervals by a varying amount of money,
trade checks or coupons, or more broadly, one which
provides an element of chance, is a gambling device;
that according to the generally prevailing opinion,
where the return to the player is thus dependent on
an element of chance, a slot machine is a gambling
device even though the player is assured of his money's
worth of some commodity and hence, cannot lose; that
a machine which returns merchandise of the value of
the coin played therein, and in addition, a chance of
receiving a varying amount of checks which may be
used to play the machine for amusement only is a
gambling device, the right to continue the operation
of the machine for amusement being a thing of value
within statutes directed against gaming. Many cases
are cited sustaining the text and many more will be
found in the annotations appearing in 38 A. L. R. 73;
60 A. L. R. 343; 81 A. L. R. 177; and 135 A. L. R. 104.
An examination of some of these cases disclose the
wide variety of the many mechanical devices for play-
ing games which have been the subject of considera-
tion by the courts in many of the States in this country
and in Canada in order to determine whether they
were gambling devices.

In *Painter v. State of Tennessee,* 163 Tenn. 627, 45 S. W. (2d) 46, 81 A. L. R. 173, a mint-vending machine was held to be a gambling device within the meaning of the statute of that State. This machine in addition to delivering a package of mints for the customer's coin also, at times, emitted metal checks or chips, the number of which was controlled by the interior mechanism of the machine. These metal checks or chips had no intrinsic value and were used solely to operate another part of the machine by which a combination of symbols was made to appear, which, by reference to a printed legend on the front of the machine, representing one of the familiar baseball plays such as a base hit, a home run, an out or a base on balls, enabled customers, with the assistance of a picture, to play an imaginary game of baseball.

In *State ex rel. Dussault v. Kilburn,* 111 Mont. 400, 109 P. (2d) 1113, 135 A. L. R. 99, the court held a pinball machine a gambling device. The machine in that case was operated by inserting a coin or trade checks in a slot which placed the ball or marble in position for playing. If successful and the ball dropped in certain holes the machine returned trade checks to the player redeemable in merchandise or usable in playing the machine. The number of checks received in the payoff varied according to the hole in which the marble or ball fell. If the player was unsuccessful in getting the ball into one of the proper holes he received nothing on the play. The player, by controlling the force with which the ball was propelled, was enabled to develop a certain amount of skill but the court said the result, to the patronizing public generally, was purely a matter of chance. In *Harvie v. Heise,* 150 S. C. 277, 148 S. E. 66, the court held a so-called mint-vending machine a gambling device. This machine, in addition to delivering a package of mints in return for a coin, also at irregular intervals issued tokens which could be used solely to operate the machine but when so used the operator did not receive any

mints or other thing of value except the amusement afforded in again playing the machine. In the course of its opinion the court quoted from *City of Moberly v. Deskin,* 169 Mo. App. 672, 155 S. W. 842 as follows: "In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficient objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified and cunning mechanical inventions."

In *State v. Coats,* 158 Ore. 122, 74 P. (2d) 1102, the court held that the operation of the pinball machine there under consideration involved all the elements of a lottery as defined by the statutes of that State as construed by its courts. In the course of its opinion on pages 130, 131 the court said: "To say that the operation of pinball machines or slot machines involves any substantial degree of judgment or skill severely strains the credulity of any reasonable-minded person. Such machines are construed to win, and they do win. In a game involving skill or judgment, the player has a fair opportunity to win. Such opportunity is not afforded the player who 'bucks' a slot machine or a pinball machine. No judgment or skill which the player may exercise has any appreciable effect upon the result. It is to all intents and purposes, a matter of chance.—It is perfectly obvious from the information that the only act which the player can, by possibility, perform to influence the result of this operation is to pull back the plunger a greater or lesser distance, and thereby, in its initial stages, regu-

late the speed of the ball. He can send the ball to the playing surface at greater or lesser speed, but he cannot guide or influence its course after it gets there. He cannot aim at anything, as in a game of billiards, or baseball or golf, but is absolutely limited by the mechanics of the device to propelling the ball along the so-called channel to the upper end of the table.''

In *Alexander v. Martin,* 192 S. C. 176, 6 S. E. (2d) 20, a pinball machine operated very much like the one in the instant case was held to be a gambling device within the meaning of the statutes in that State which makes it a criminal offense for one to keep on his premises, or to operate any vending or slot machine or other devices pertaining to games of chance of whatever name or kind, except automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance. The machine in that case, as here, was so constructed that whatever number of free games a player might gain it was not necessary to insert another coin but if a free game was in order all that was necessary to gain the five balls was to push the slot in where the original coin was inserted. The court cited *Harvie v. Heise, supra,* wherein it appeared that the machine in that case irregularly released certain checks or tokens intended to be used only in the operation of the machine while in the *Alexander* case no tokens or checks were released but. the machine operated automatically. Commenting upon this feature the court said that these tokens were but symbols evidencing the right acquired by the customer who drew them to play the machine without additional cost; that the thing actually received was the right to operate the machine without having to deposit an additional coin and concluded; ''It matters little whether this right was evidenced by tokens or by an automatic recorded score." The court

then observed that while it was true that the player receives the same number of balls for each coin deposited, he may or may not make the same score for each coin's worth of balls played. This in itself, said the court, is an element of contingency, dependent upon chance and would make of the machine an unlawful device, but in addition to that and contingent upon the score recorded, free games are awarded. "Therefore," continued the court, "it is clear that the lure and inducement to the player to operate the machine is the chance of occasionally being allowed to play a game or games without additional cost. This feature, we think, clearly pertains to a game of chance. And this is true, whether the machine is played for amusement or for other returns, such as money. Amusement is recognized by the courts as a thing of·value, and where the amount of amusement given by the player of a machine is determined by chance or hazard, such machine is held to be a gambling device." The court then quoted from *Kraus v. City of Cleveland*, 135 Ohio St. 43, 19 N. E. (2d) 159 at page 160 as follows: "Amusement is a thing of value, were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives. Whoever plays the device and obtains tokens therefrom receives more value for his nickel, with respect to the amount of amusement obtained, than the player who receives none at all.—The minimum amount of amusement offered in each play is that which is offered without any return of tokens. Whatever amusement is offered through the return of tokens is added amusement which a player has an uncertain chance of receiving. This added amount of amusement, the procurement of which is dependent wholly upon chance, is a thing of value (*Gaither v. Cate,* 156 Md. 254, 267, 144 A. 239; *State ex rel. Manchester v. Marvin,* 211 Iowa 462, 464, 233 N. W. 486; *Painter v. State,* 163

Tenn. 627, 45 S. W. (2d) 46, 81 A. L. R. 173; *State v. Mint Vending Machine,* 85 N. H. 22, 154 A. 224; *Rankin v. Mills Novelty Co.,* 182 Ark. 561, 32 S. W. (2d) 161), the lure extended by the device to the player.''

In *Alexander v. Hunnicutt,* 196 S. C. 364, 13 S. E. (2d) 630, the pin-table machine there the subject of inquiry is fully described and it is stated that there was no pay-off of any kind, no free games and the sole return to the player was the amusement or entertainment he derived from his success in running up a score. The court adhered to its decision in *Alexander v. Martin, supra* and held that even if the only element of chance involved was the resulting score which may be made, still the machine was a gambling device and came directly within the terms of the statute.

The claim that the player intends by putting his nickel into the machine to secure amusement only, which may vary in amount, like seeing a baseball game that may go more than nine innings, or a moving picture show, the exact length of which is unknown to him when he buys a ticket, is not, in any way, analogous and does not get away from the fact that the player of the pinball machine may win a free game or games, each worth a nickel, or he may fail to secure the privilege of such free games. No such situation obtains at a baseball game or at a moving picture show. The argument that because the machine does not deliver slugs or tokens good for free games is equally fallacious. The situation of the player and of the proprietor of the machine is identical in either instance and as was said in *Alexander v. Martin, supra,* it matters little whether the right to operate the machine without having to deposit an additional coin was evidenced by tokens or by an automatic recorded score.

The old-fashioned slot machine, commonly called a ''One armed bandit,'' paying coins directly in uncertain amounts at uncertain intervals, was a pioneer in this field. Prosecutions for operating them, and hold-

ings that they are gambling devices resulted in continuous unstinted effort by the parties interested to invent something that would thwart the law. Condemnation of machines delivering cheap gum not worth the nickel paid for playing, with tokens at uncertain intervals and in uncertain amounts, redeemable in cash or merchandise, was followed by machines delivering gum or mints worth a nickel, and a similar delivery of tokens and by machines where the tokens were ostensibly redeemable only in free games, or where the machine automatically awarded free games without the delivery of tokens. Some of them have dropped the mint or gum feature and the pinball machine here involved is of the latter type.

The argument that the free play feature does not come within the purview of section 2 above quoted, and that thereunder money only must be won or lost, is groundless. The preceding section of our statute, enacted at the same time, provides penalties for operating, keeping, owning, renting or using the named devices and includes in the same descriptive language, after the word ''money,'' the words ''or other valuable thing.'' The record here conclusively shows the machine in controversy is ''for the reception of money on chance'' and ''upon the operation of which money is staked or hazarded.'' This is all that is required by section 2. It does not require that money only be won or lost. Its efficacy is as potent as if it had included the words ''or other valuable thing.''

Winter and summer resorts, hotels, restaurants, passenger vessels, taverns, bars, dance halls, filling stations, and numerous other places, all over the country, are infested with pinball machines of varied types and character. While they vary in mechanical details, size and shape, and in the name of the game played from the original slot machines, the ultimate result however of the playing is the same, in principle as the playing of the original slot machines. While it does

not appear from the evidence in this case still it is common knowledge that the co-called free game is frequently but a subterfuge, and that the common practice is for the proprietor, when the player obtains a winning score, to pay off in money or merchandise. It is also common knowledge that the machine itself is sometimes used by players to determine who shall buy the drinks or pay for refreshments, cigars or lunch and when so used it is a gambling device within the meaning of our statute. The fact that there is no testimony in this case that the machine in controversy was being so operated, is not the test of whether it is a gambling device. The record shows its mechanical features are similar to the common run of pinball machines, and the result of playing it has the same or a comparable element of chance in the score made, as those in general use. Their common use as gambling devices is what condemns them. *People v. One Slot Machine*, 303 Ill. App. 337 (Abst.), relied upon by appellant merely holds there was no evidence in that case as to how the player could win or that anybody could win or lose anything. It has no application here.

The element of skill, relied upon by appellant, is a negligible quantity as to most players. While the officer who played the machine testified he could direct the ball at a particular object with a fair degree of accuracy, and could be almost certain what object it is going to hit, depending upon the way he used the plunger, his testimony also shows that the control over the ball was only by the tension put on the spring by the distance the plunger is pulled back. The result of this is clear. If the plunger is pulled back a certain distance, when it is released, the force of the blow tends to make the ball travel the distance required to hit a certain one of the objects. If the force of the blow is greater or less than that or if the balls vary in weight, the object will be missed. While an experienced player may learn, with practice, to govern, to

some extent, the force of the blow, to the average player the game is purely one of chance. Moreover, with all the skill that an experienced player may attain, it is common knowledge that when a particular object is struck, the result is seldom the same, due in a measure to the resiliency of the object, the weight of the ball and the angle at which it is struck. It is obvious from the facts in evidence that the player has no control over the ball after he releases the plunger. He can determine how far back he wishes to draw the plunger and the only skill he can exercise is to draw the plunger back to the place where he deems the force will direct the ball at a particular object. After that, what happens is purely in the realm of chance. That the element of chance is predominant in similar devices is held in the following cases: *Silfen v. City of Chicago,* 299 Ill. App. 117; *Howle v. City of Birmingham,* 229 Ala. 666, 159 So. 206; *Sparks v. State,* 48 Ga. App. 498, 173 S. E. 216; *Commonwealth v. Bowman,* 267 Ky. 602, 102 S. W. (2d) 382; *State v. Livingston,* 135 Me. 323, 196 Atl. 407; *State ex rel. Dussault v. Kilburn, supra* and the many cases cited in the annotation following that case in 135 A. L. R. 99; *Shapiro v. Moss,* 245 App. Div. 835, 281 N. Y. S. 72, aff'd 270 N. Y. 609, 1 N. E. (2d) 353; *State v. Coats, supra: Adams v. Antonio,* — Tex. Civ. App. — 88 S. W. (2d) 503; *City of Milwaukee v. Burns,* 225 Wis. 296, 274 N. W. 273.

In *Guarnera v. County of Lee,* 285 Ill. App. 238 we held the mint-vending machines there under consideration to be wholly machines of chance and that their purpose was to stimulate the gambling propensity, the very propensity the legislature sought to suppress. Here too, the element of chance, not skill, is the soul of the transaction.

In challenging the jurisdiction of the trial court because the machine was seized without a search warrant issued under division 8 of the Criminal Code (Ill.

Rev. Stat. 1941, ch. 38, par. 691, *et seq.* [Jones Ill. Stats. Ann. 37.666 *et seq.*]) appellant relies on *Bobel v. People, supra* and *Frost v. People, supra.* The holding in those cases was that the act to prohibit the use of slot or other machines or devices for gambling purposes was not unconstitutional as not containing within itself provisions for a hearing to determine whether the property was lawfully taken and subject to destruction. In its opinion in the *Bobel* case the court said that section 2 was not involved in the determination of that case but observed that proper proceedings to enforce it could be had under the general provisions found in division 8 of the Criminal Code. No question was involved as to the court's jurisdiction in a trial after a summary seizure. In the *Frost* case it is said: "The legislature have determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provision. (*Glennon v. Britton,* 155 Ill. 232.) The evidence fully justified the conclusions of the court that the property condemned and ordered to be destroyed had no value or use for any other purpose than that of gambling, and there is no error in the record which calls for a reversal of the judgment."

If there was anything illegal in the proceedings in the instant case it was in the seizure only. There was a trial on the question of the right of destruction under a petition and answer. The machine demonstrated its character as a gambling device in the presence of the officer who seized it. It is the settled law that where an offense is committed in the presence of an officer, he has authority to make an arrest without a warrant. (*People v. Caruso,* 339 Ill. 258.) If the right

of arrest exists, the right of search and seizure is incidental thereto. (*People v. Davies*, 354 Ill. 168; *People v. Macklin*, 353 Ill. 64; *People v. Roberta*, 352 Ill. 189.) The machine being a gambling device under section 2, the right to arrest the possessor existed under section 1. We know of no reason why an omission to make an arrest in such a case would deprive the officer of the right to seize the contraband machine by which an offense was committed in his presence. One reason for upholding the right of seizure alone is that the possessor might escape before the officer could make the arrest. Another is that if the officer was obliged to first procure a search warrant, the contraband article, during his absence on that mission, might be removed from the premises and concealed, and the warrant, being effective only as to the particular premises, would be wholly ineffective. Furthermore, the right to summarily seize and destroy contraband articles, and to seize and sell articles not inherently illegal when unlawfully employed, without process or judicial proceedings, has been upheld in a number of jurisdictions. Fishing nets maintained in State waters in violation of the law may be seized and destroyed, *Lawton v. Steele*, 152 U. S. 133, 38 L. Ed. 385; fish baskets likewise used may be seized and destroyed, *Weller v. Snover*, 42 N. J. Law (13 Vroom) 341, automobile used for illegal transportation of liquor may be condemned and forfeited, *State v. Lee*, 113 Kan. 462, 215 Pac. 299; *State v. 1920 Studebaker Touring Car*, 120 Ore. 254, 251 Pac. 701; *Keeter v. State ex rel. Saye*, 82 Okla. 89, 198 Pac. 866.

In *Glennon v. Britton*, 155 Ill. 232 at page 245, the Supreme Court of this State said: "Under the various acts of Congress goods and things are seized, condemned and destroyed without service of process on the owner, other than seizure of the goods and arrest of the person in whose possession they are found, and that such statutes, and proceedings under them,

are regarded constitutional and valid has been determined in many adjudicated cases in the Federal courts.''

The seizure of property employed as a gambling device in violation of a statute is a proceeding *in rem,* and being contraband, the provisions of the Constitution relating to trial by jury and depriving one of his liberty or property without due process of law are inapplicable. (*Cambria v. Bachmann,* 93 W. Va. 463, 118 S. E. 336.) To the same effect is *Mullen & Co. v. Moseley,* 13 Idaho 457, 90 Pac. 986, 12 L. R. A. (N. S.) 394. There is nothing said in the *Bobel* case or the *Frost* case that is in contravention of the doctrine thus laid down in other jurisdictions, but they merely point out one reason why section 2 is not unconstitutional, not excluding the reasons given by the other courts.

Appellant's claim of want of jurisdiction is without merit. The slot machine which is the subject matter of this proceeding comes within the purview of section 2 of our statute. The record justifies the judgment of the county court and that judgment will be affirmed.

*Judgment affirmed.*