People of State of Illinois, Plaintiff-Appellee, v. One Device Known as a "Joker" or "Slotless" Slot Machine Bearing Serial Number 190284, Defendant, Beulah Whitsitt, Intervenor-Appellant.

Gen. No. 10,588.

Opinion filed May 2, 1952. Released for publication May 22, 1952.

STEWART & LYTTON, of East Moline, for appellant; BEN A. STEWART, of East Moline, of counsel.

IVAN A. ELLIOTT, Attorney General of Illinois, of Springfield, for appellee; BERNARD J. MORAN, State's Attorney, of Rock Island, and HARRY L. PATE, Assistant Attorney General, of Tuscola, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

This is an appeal by Beulah Whitsitt, intervenor and appellant herein, from a judgment of the county court of Rock Island county, whereby a certain machine belonging to her was ordered destroyed as a gambling device and her counterclaim praying for a return of said machine was denied.

On January 4, 1951, at about 9:30 p. m., two police officers entered the tavern of the intervenor, who will be hereinafter referred to as appellant, located in the city of Rock Island, and took possession of and carried away a certain machine or machines, and delivered the same to the chief of police of Rock Island. Neither of the officers had a warrant authorizing a search of the premises or the seizure of the machines.

On January 11, 1951, the People filed a petition in the county court of Rock Island county, alleging that said machine, which was designated as a "Joker" or "Slotless" slot machine, was gambling equipment and was seized by police officers in the tavern of the appellant; that said "Joker" is gambling equipment upon the action of which money is staked, hazarded, bet, won or lost and is manufactured and made for the purpose of gambling uses and has no lawful purpose. The petition asked that notice be given appellant, in whose possession the machine was found, and prayed for an order directing petitioner, the State's Attorney, to destroy said machine. Summons for appellant was ordered to issue and was served and returned and appellant appeared therein as intervenor.

Appellant filed her answer and counterclaim in which she alleged that said machine was unlawfully seized, without any search warrant, and in violation of her rights guaranteed by the Fourth Amendment to the Constitution of the United States and section 6 of article II of the Constitution of Illinois and in violation of the statutes of the State of Illinois. She denied that said machine was gambling equipment and prayed

that the People's petition be dismissed. In her counterclaim she claimed ownership of the machine, alleged it was not gambling equipment as defined in the Act prohibiting slot machines (Ill. Rev. Stat. 1942, chap. 38, par. 342 [Jones Ill. Stats. Ann. 37.272]), was not so used, that it was unlawfully seized, and she prayed that it be returned to her. The People, answering this counterclaim, admitted the taking of the machine, alleged it was gambling equipment and not the subject of ownership, denied that it was not a gambling device as defined by statute and denied that it was not used for gambling purposes.

The issues being formed on these pleadings the court heard evidence, which disclosed that the machine was seized by two officers in the tavern of the intervenor about 9:30 p. m., at a time when the tavern was open and operating and accessible to the public. The machine was taken from the bar where it was found in plain view and was plugged into the electric current and was lighted. The officers had no warrant and made no arrest. There was no evidence that this machine was used in any manner and no evidence that it had no lawful use. One witness, a police officer, testified, over the objection of the intervenor, that he had played a similar machine in another tavern and had been paid in cash for a winning play. A detailed description and photographs of the machine were introduced in evidence by stipulation of the parties, and the machine itself was offered and admitted in evidence over intervenor's objection.

The court below found that the device was a gambling device *per se* and had been lawfully seized on view, and not in violation of the Federal or State Constitutions, and ordered its destruction by the sheriff of the county. Intervenor's counterclaim was dismissed with prejudice.

The intervenor appealed directly to the Supreme Court on the theory that a constitutional question is involved. She contends that the seizure of her property without a search warrant violates her constitutional rights guaranteed her by section 6 of article II of the constitution of the State of Illinois and the Fourth Amendment to the Constitution of the United States. The Supreme Court in passing upon this contention uses this language: "The statute (Ill. Rev. Stat. 1949, chap. 38, par. 342,) describes gambling devices and provides that such devices shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found. By this statute the legislature has determined that gambling devices are pernicious and dangerous to the public welfare and the keeping of them is prohibited by law. The constitutionality of this act has been sustained by this court in *Frost v. People,* 193 Ill. 635, and in *Bobel v. People,* 173 Ill. 19. These cases lay down the principles that devices which are manufactured, made, or kept for gambling purposes and have no potential for lawful use, are gambling devices *per se* and are not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provisions. These cases have been consistently followed by this court.

"It is obvious, therefore, that if the machine here involved is such a gambling device as is described by the statute, its seizure and destruction raise no constitutional questions not previously determined by this court. The only debatable question in this case is whether this machine is such a gambling device, and that is a question of fact which raises no question of constitutional construction." The Supreme Court

565

transferred the case to this court. (*People v. One Device,* 410 Ill. 318.)

At the trial of the case a long stipulation was entered into describing the machine in question. It appears the only difference between this machine and the old time slot machine commonly termed a one-arm bandit is, that in the present one no money is put into the machine when played or discharged therefrom when the person wins. It has three rollers on which are symbols like the old slot machines; namely, the fruit, gum, bell, plum, orange, cherry and lemon, but instead of registering the win on the machine itself, there is also a second machine attached to the "Joker" machine, and it registers the result of the play of the machine. When the machine is operated, there is an arm to the side that is pulled forward, and it causes the drum inside of the principal device to spin freely with the symbols appearing inside of the frame, and they are the ones heretofore mentioned, the bell, plum, etc. For instance, if three plums appear in the window after the drums have stopped whirling, thirteen points are added to the score in the window. When three bells appear in the said frame when the drums have stopped after a play, the window entitled "Joker," lights up.

Mr. Eugene Hermes testified that he saw in operation an identical machine as the one in question; that he played that machine in another tavern; that he walked up and handed the bartender a dollar and told him he wanted to play nickels; that he received the money and racked up twenty plays where it says plays on the machine; that he pulled the lever on the large machine twenty times, and it was registered on the small machine. He said the lever he pulled would coincide with the one on the right-hand side of the machine in question; that when he pulled the lever, the machine went into operation; that wheels and drums turned on the inside; that the drums were visible

through the window on the front of the machine; that when he had pulled the arm or lever, twenty times, he did not win anything and nothing happened excepting that the wheels and the drums spun around. He then gave the bartender another dollar and the bartender pushed the button twenty times more indicating twenty on the window in plays. He operated the machine the second time in the same manner as the first and won nothing. He then gave the bartender $1.50 and the bartender set the machine for thirty plays. He then operated the machine as of the first time, and won nothing. He then paid the bartender one dollar and he again racked up twenty more plays. This time he won thirteen nickels. The bartender then paid him sixty-five cents for his winnings. He further testified that as a police officer, he had seen the old-fashioned slot machines in operation. The old-time slot machine is similar in appearance to the machine in question, except that it has glass partition in front where the jack pot lays, and it also has a place to insert coins at the top.

On cross-examination the witness testified that the old-fashioned slot machine has a mechanism that ejects coins that are won from the machine, but there is no place on the machine in question where any coins can be inserted, or any coins ejected from it. To the question, "Did you understand and realize at the time you were playing the machine, which you had described, that you were gambling?" He answered that he did.

A similar question here was presented to our Supreme Court in the case of *Bobel v. People,* 173 Ill. 19. In the course of their opinion they use this language: "Plaintiff in error contends that the mere keeping of such a gambling machine is not an offense under the statute; that to constitute the offense the machine must be actually used, or at least actually kept, for gambling purposes, and that the indictment does not charge that

it was kept for gambling purposes, but merely charges that it was a machine of the kind used for gambling purposes; and the contention is, not only that the indictment should have been quashed, but that the court erred in admitting testimony not only descriptive of this slot machine, but that it was in fact, at the time and place mentioned, used for gambling purposes. We are satisfied, as before stated, that the indictment is good, and are also of the opinion that the testimony was properly received. If for no other purpose, this evidence was proper to prove the character and purpose of the machine,—that is, that it was a device upon which money is staked or hazarded, or upon the result of the action of which money is staked, bet, hazarded, won or lost,—in other words, that it was a gambling device."

This court in the case of *People v. One Pinball Machine,* 316 Ill. App. 161, had a similar question presented to us as to whether a pinball machine was a gambling device *per se.* In that case we quoted from the case of *State v. Coats,* 158 Ore. 122, 74 P. (2d) 1102. In the course of that opinion the court said: "To say that the operation of pinball machines or slot machines involves any substantial degree of judgment or skill severely strains the credulity of any reasonable-minded person. Such machines are construed to win, and they do win. In a game involving skill or judgment, the player has a fair opportunity to win. Such opportunity is not afforded the player who 'bucks' a slot machine or a pinball machine. No judgment or skill which the player may exercise has any appreciable effect upon the result. It is to all intents and purposes, a matter of chance."

The machines were brought before us and demonstrated. No explanation was offered as to what lawful use they could be put. It is hard, if not impossible, to conceive that the machine in question could be used

for any lawful or useful purpose. It is our conclusion that the trial court properly held that the machine in question was a gambling device *per se,* and properly ordered its destruction. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*