People of State of Illinois, Appellant, v. Two Roulette Wheels and Tables et al., Appellee.

Gen. No. 43,277.

144

Heard in the third division of this court for the first district at the December term, 1944. Opinion filed May 18, 1945. Rehearing denied June 8, 1945. Released for publication June 8, 1945.

WILLIAM J. TUOHY, State's Attorney, and THOMAS J. COURTNEY, former State's Attorney, for appellant; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and JOSEPH A. POPE, Assistant State's Attorneys, of counsel.

GEORGE M. CRANE, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On October 30, 1943, the grand jury returned an indictment to the criminal court of Cook county charging that Sam Romano and 11 other persons on or about October 7, 1943, conspired to keep a gambling house at 4730 West Cermak Road in the Town of Cicero. On March 13, 1944 Romano filed a petition in the case representing that on October 7, 1943, he occupied the second floor of the premises at 4730 West

Cermak Road, Cicero, Illinois; that he had in the premises certain personal property including 6 tables, 3 adding machines and 3 change machines; that on that date certain deputy sheriffs and police officers assigned to the state's attorney's office gained entrance to the premises by chopping down the doors; that they did not have a warrant to search the premises; that they were not in pursuit of any person who had committed a crime; that they did not see any violation of law previous to their unlawful entry; that they seized the articles mentioned; that on a trial the articles may be introduced in evidence; that on the same day officers attached to the state's attorney's office went to the premises at 4738 West Cermak Road, Cicero, Illinois, also occupied by petitioner; that they smashed the door leading to the premises and removed therefrom 2 roulette wheels, 8 tables, 3 change machines, 3 adding machines and $13,000 contained in a safe which the officers forced open; that the officers did not see any violation of law previous to their unlawful entries; that the unlawful searches and seizures were in violation of his constitutional rights; and he prayed for an order suppressing as evidence against him any of the articles so taken, and for a further order directing the officers to return the "articles" to him. On the hearing of the petition Nicholas Disteldorf, called as a witness in behalf of petitioner, testified that he was a police officer of the City of Chicago, attached to the office of the state's attorney of Cook county; that on October 7, 1943, he went to 4738 West Cermak Road, Cicero, Illinois, which had a store front; that he got into the store by "going through the door"; that he had no search warrant at the time; that he found nothing on the first floor; that he then went to the basement and found "nothing in the basement"; that he looked in several rooms in the basement and in one of the rooms in the front portion of the basement he found 2 roulette wheels and tables, 4

black jack tables, 1 dice table, 1 chuck-a-luck cage, 36 decks of playing cards, 6 dice racks and 4 chip racks; that at ''that particular time none of the articles was being used in gambling,'' and that he seized ''the said articles.'' This was all the evidence given on the motion. On March 14, 1944, the court sustained the motion to suppress the articles expected to be offered in evidence, but did not enter any order with reference to the return of the articles. A trial under the indictment before the court and a jury resulted in a verdict, returned March 20, 1944, finding all of the defendants not guilty, and judgment was entered on the verdict.

On April 17, 1944, the state's attorney in a petition entitled People of the State of Illinois vs. Two Roulette Wheels, et al., and filed in the same case and bearing the same number as the indictment hereinbefore mentioned, represented that ''On October 7, 1943, upon information received, one Nicholas Disteldorf, a police officer of the City of Chicago, attached to the office of the State's Attorney of Cook County, Illinois, entered the premises at 4738 West Cermak Road in the Town of Cicero, Illinois, and there found the following gambling equipment: 2 roulette wheels and tables, 4 black jack tables, 1 dice table, 1 chuck-a-luck cage, 36 decks of playing cards, 6 dice racks and 4 chip racks, which articles are gambling equipment *per se,* upon the action of which money is staked, hazarded, bet, won or lost; that the said gambling equipment was seized by the said Nicholas Disteldorf and is now in the custody of the State's Attorney of Cook County, Illinois''; and prayed the court to enter an order authorizing him to destroy such articles. No order was sought or entered requiring either the People or the petitioner to answer either petition. Apparently, the parties and the court treated the People's petition as an answer to Romano's petition, with the addition of a prayer for destruction of the

articles. On June 23, 1944, the People in support of
their petition, presented by stipulation the same tes-
timony of Nicholas Disteldorf which had been pre-
sented on the hearing of the motion to suppress. On
June 28, 1944, the court entered an order finding that
it had jurisdiction of the parties and the subject mat-
ter; that the premises occupied by Romano were lo-
cated at 4738 West Cermak Road, Cicero, Illinois;
that the entry by the police officers was illegal and
without authority of law as to the premises at 4738
West Cermak Road, Cicero; that the search of the
premises was illegal and without authority of law;
that the seizure of the enumerated articles at 4738
West Cermak Road was illegal; that the articles were
not used for gambling at the time they were found and
seized; that the articles are now in the custody of the
Cicero police department and the state's attorney, and
the court ordered that all of the articles seized in
the premises at 4738 West Cermak Road be returned
to Romano, to which the People excepted. On July 10,
1944, the People, by the state's attorney, filed a notice
of appeal from ''an order of the Criminal Court of
Cook County refusing to order the destruction of
the above named instruments and tables.'' The notice
of appeal states that ''the appeal is designed to re-
verse the judgment of the Criminal Court of Cook
County and the order refusing to order the destruction
of the above mentioned articles against which these
proceedings were had.''

The record does not show that the court ruled
on the petition of the state's attorney for an order
authorizing him to destroy the alleged gambling equip-
ment. However, as the court entered an order direct-
ing that the seized articles be returned to Romano,
this inferentially amounted to a denial of the state's
attorney's petition for an order to destroy the articles.
Appellant states that this is a proceeding *in rem* and
has none of the elements of a criminal case. From a

recitation of the facts as shown by the record, the police entered the premises at 4730 West Cermak Road and also at 4738 West Cermak Road. The indictment referred to the premises at 4730 West Cermak Road, but the alleged gambling paraphernalia seized at 4738 West Cermak Road are the only articles involved in the instant case. The attorney for the appellee states that the articles seized at 4730 West Cermak Road were ordered destroyed as gambling equipment, as prayed by the state's attorney, but this does not appear in the record. Section 26 of article VI of the constitution of Illinois provides that the criminal court of Cook county shall have the jurisdiction of a circuit court in all cases of criminal and *quasi* criminal nature arising in the County of Cook, or that may be brought before the court pursuant to law, and that it shall have no jurisdiction in civil cases, except in those on behalf of the People and incident to such criminal or *quasi* criminal matters. We assume that it is the People's position that the petition to destroy the alleged gambling paraphernalia was "incident to such criminal or *quasi* criminal matters." Appellee maintains that the order appealed from was entered in a criminal proceeding. Par. 747, ch. 38, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 37.732], limits the right of the People to a writ of error to cases in which the trial court had "quashed" or "set aside" an indictment or information, and does not grant a general right of review to the People. *People v. Burns,* 364 Ill. 49; *People v. White,* 364 Ill. 574.

In urging a reversal of the order, the People state that it is elementary that gambling devices which are capable of no use for lawful purpose are not the subject of property, relying on *Frost v. People,* 193 Ill. 635; *Bobel v. People,* 173 Ill. 19; *People v. One Pinball Machine Owned by Henry Fox,* 316 Ill. App. 161. The *Frost* and *Bobel* cases involve the application of division VIII of the Criminal Code (pars. 691–699, ch. 38,

Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 37.666–37.674]), regulating the procedure concerning search warrants. Section 1 provides that "when a complaint is made in writing, verified by affidavit, to any judge or justice of the peace, that personal property (particularly describing the same) has been stolen, embezzled or fraudulently obtained . . . and that the complainant believes that it is concealed in any house or place (particularly describing the same), . . . the judge or justice of the peace, if satisfied that there is reasonable cause for such belief, shall issue a warrant to search such house or place or person, automobile or other vehicle, for such property or such pistol, revolver or other firearm." Section 2 provides that any such judge or justice may, on like complaint, issue search warrants when satisfied that there is reasonable cause, to search for and seize counterfeit or spurious coin, forged bank notes and other forged instruments, or tools, machinery or materials prepared or provided for making either of them; to search for and seize books, pamphlets, ballads, printed papers or other things containing obscene language, or obscene prints, pictures, figures or descriptions, manifestly tending to corrupt the morals of youth, or intended to be sold, loaned, circulated or distributed, or to be introduced into any family, school or place of education; to search for and seize lottery tickets, or materials for a lottery, unlawfully made, provided or procured, for the purpose of drawing a lottery; *and to search for and seize gaming apparatus, or implements used, or kept and provided to be used in unlawful gaming, in any gaming house, or in any building, apartment or place resorted to for the purpose of unlawful gaming.* Section 3 provides that all such warrants shall be directed to the sheriff or any constable of the county, or bailiff of the municipal court of Chicago, commanding him to search in the day time the house or place where the things for which he is required to search are believed to be

concealed (which place and property to be searched for therein shall be particularly designated and described in the warrant, and if a person or automobile or other vehicle is to be searched the name or names by which such person is commonly known shall be stated, and the kind of automobile or vehicle shall be stated, and the kind of firearm to be searched for shall be specified in the warrant), and to bring such stolen property or other things, when found, to the judge or justice of the peace who issued the warrant, or to some other judge or justice of the peace, or court having cognizance of the case. Section 4 provides for the issuance of a search warrant and the authorization by two judges or justices of the peace to search the house or place in the nighttime, and to bring the property or things described in the warrant or summons and the person in whose possession they are found, before either of the judges or justices of the peace of the county. Section 5 provides that an officer may break open any outer or inner door or window of a house, or anything therein, if, after notice of his authority and purpose, he is refused admittance, using no more force than is necessary. Section 6 provides that the return of the officer shall particularly specify the property taken and the place where and the person from whom the property is taken. Section 7 provides that when an officer in the execution of a search warrant, finds stolen or embezzled property, or seizes any of the other things for which a search is allowed by the act, all the property and things so seized shall be safely kept by direction of the judge, justice or court, so long as necessary for the purpose of being produced or used as evidence on any trial. As soon as may be afterwards, all such stolen and embezzled property shall be restored to the owner thereof, and all other things, firearms excepted, seized by virtue of such warrants shall be confiscated and burnt or otherwise destroyed, under the direction of the judge, justice or court. Such

firearms shall be returned to the owner thereof, or to the person from whom taken, upon proof that the same was lawfully possessed by such owner or such other person. All firearms not so restored to the owner shall be confiscated and destroyed or otherwise disposed of under the direction of the judge, justice or court. Section 8 provides that if on a hearing it appears that there was no probable cause for suing out the warrant, the whole cost may be taxed against the complainant and execution awarded. Section 9 provides that when a person charged with a felony is suspected by the judge or justice of the peace before whom he is brought to have upon his person a dangerous weapon, or anything which may be used as evidence of the commission of the offense, the judge or justice may direct him to be searched in his presence, and such weapon or other thing to be retained, subject to the order of the court in which the defendant may be tried. The fourth amendment to the United States Constitution provides: ''The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'' Section 6 of article II of the Illinois Constitution is in substantially the same language as the fourth amendment aforesaid. The fifth amendment to the Federal Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. Section 10 of article II of the Illinois Constitution reads: ''No person shall be compelled in any criminal case to give evidence against himself.'' Under the search warrant statute the complaint must be verified and state that the facts charged are true, and must state the facts on which the complainant bases his belief, not conclusions or hearsay. The complaint must show on its face that the

facts are within the personal knowledge of affiant. The place to be searched must be described in such a manner as to leave the officer in no doubt. The property to be seized must be described with as much definiteness and detail as possible, and the description must be such that the officer serving the warrant can readily identify it and will not seize the wrong property. *People v. Elias*, 316 Ill. 376; *People v. Martens*, 338 Ill. 170; *People v. Prall*, 314 Ill. 518.

In *People v. Brocamp*, 307 Ill. 448, the question arose in our Supreme Court for the first time whether it is the duty of the court to determine if property and papers of a defendant were obtained by unlawful search and seizure when application has been made in apt time for their exclusion, and answering, the court said (456):

"  . . .  and it is our duty, in view of our obligations to support the constitution, to hold that it was the duty of the trial court to inquire into the truth of the charge of defendant, and, if it be found to be true, to sustain his objection to the introduction of all exhibits that were claimed by him as his property and taken from his home by means of unlawful search and seizure."

In the *Brocamp* case the court also said (453):

"There was a legal way for the State to proceed by its officers in the search of his premises, by first making a showing that they were entitled to a warrant authorizing them to search for and seize the particular articles named, if they could make a *prima facie* showing that either the State or the prosecuting witnesses had the right to forcibly seize the articles for their purpose and use. Such action of the officers in forcibly or unlawfully and without a warrant entering the plaintiff in error's home and searching it and seizing the articles aforesaid has in unmistakable terms been condemned by the courts of this country. If an Ameri-

can's constitutional rights cannot be protected against ruthless and unlawful acts of the character disclosed in this record, then the constitution guaranteeing such rights is a mere nullity and our boasted rights of liberty are vain boastings."

The *Brocamp* case has been followed in *People v. Castree,* 311 Ill. 392, and numerous other cases. With the advent of the opinion in the *Brocamp* case, Illinois has followed the federal rule first announced in *Boyd v. United States,* 116 U. S. 616, 6 Sup. Ct. 524, and followed in *Weeks v. United States,* 232 U. S. 383, 34 Sup. Ct. 341; *Gouled v. United States,* 255 U. S. 298, 41 Sup. Ct. 261; *Amos v. United States,* 255 U. S. 313, 41 Sup. Ct. 266. It has sometimes been stated that no search warrant is necessary to search and seize gambling equipment. However, in *People v. Dent,* 371 Ill. 33, where defendant was convicted on a charge of knowingly possessing a policy book, numbers and slips, and where proper steps were taken to suppress the evidence because it had been obtained by an unlawful search and seizure in contravention of her rights under the federal and state constitutions, which the trial court declined to do, our Supreme Court held that the trial court erred in refusing to grant the motion of defendant to suppress the evidence. It therefore appears that at least since the *Brocamp* case, our Supreme Court has applied the same rule to the seizure by unlawful search of gambling equipment as to other property.

The People rely on the provisions of sec. 2 of an Act defining a gambling device for gambling purposes (par. 342, ch. 38, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 37.272]), that "every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device, and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may

be found." From the case of *Glennon v. Britton,* 155 Ill. 232, it appears that Glennon, a justice of the peace for the town of South Chicago, on a complaint under oath issued a search warrant directed to the sheriff or any policeman or constable of the county, reciting the facts contained in the complaint, and commanding them to enter the designated premises and there diligently search for the gaming apparatus and implements described, and if the same or any part thereof be found upon search, that they bring the apparatus or implements so found before him to be disposed of according to law. The police officer to whom the warrant issued made a return that he went to the premises and executed the warrant by searching the premises, and that he found two crap tables. On evidence being heard, the justice found and adjudged the property seized on the search warrant to be gambling implements and ordered them destroyed. On the issuance of a common law *certiorari* from the circuit court, the record was quashed. The justice of the peace appealed to the Supreme Court. It was contended that the proceedings before the justice, prosecuted under division VIII of the Criminal Code, were unauthorized by law and in violation of the 14th amendment of the Federal Constitution and sec. 2 of article II of the Illinois Constitution, that no person shall be deprived of life, liberty or property without due process of law. It was maintained that a statute providing for the seizure and destruction of property without notice to the owner, or any opportunity on the part of anyone having an interest therein, to be heard, is unconstitutional. Our Supreme Court said (240):

"It is not true, as seems to be supposed by counsel, that the statutes in question do not provide for or contemplate the service of any notice upon the owner or party in possession preliminary to the condemnation and destruction of the property seized. Section 3 provides for a search in the day time, and that the warrant

shall command the officer, among other things, 'to bring such stolen property or other things, when found, *and the person in whose possession they are found,* to the judge or justice of the peace who issued the warrant, or to some other judge or justice of the peace or court having cognizance of the case.' Section 4 provides for search in the nighttime, in which case the warrant is to be issued by two judges or justices, and, among other things, shall command the officer 'to bring the property or things described in the warrant or summons, *and the person in whose possession they are found,* before either of the judges or justices who issued the warrant, or some other judge or justice of the peace of the county.' Section 7 provides that the property seized under the search warrant, for which search is allowed by the act, 'shall be safely kept, by direction of the judge, justice or court, so long as necessary, for the purpose of being produced or used as evidence *on any trial,*' and that, as soon as may be afterward, stolen or embezzled property is to be returned to the owner, and all other things seized by virtue of such warrants to be burned or otherwise destroyed, under the direction of the judge, justice or court. Section 8 provides: 'If, *on the hearing,* it appears there was no probable cause for suing out the warrant, the whole cost may be taxed against the complainant,' etc.

"It is manifest that sections 3 and 4 contemplate that the officer empowered to execute the search warrant shall bring, not only the things described in the warrant and against which the complaint was made, but also the *person* in whose possession they are found, if found, before the judge or justice. Notice of the proceedings, by service of the search warrant and bringing the person in possession of the property before the court, is clearly intended by the statute, and is doubtless required for the purpose of giving the owner or other person interested an opportunity to

claim the property, as well as, perhaps, to ascertain whether the party in possession has committed an offense. . . . The words 'trial' and 'hearing,' as here used, are familiar terms, and are generally understood as meaning a judicial examination of the issues between the parties, whether of law or of fact. . . . Statutes of the character of those in question are enacted upon the theory that the proceedings shall be against the thing or *in rem*, and the State and Federal reports abound in decided cases in which laws of this kind have been held constitutional and valid, where no service was had or contemplated other than that upon or against the offending thing and the person in whose possession it is found. . . . Searches and seizures of the character in the case at bar are not deemed unreasonable, and therefore are not within the inhibition of Federal and State constitutions, which guarantee to the citizen immunity against unreasonable searches and seizures. . . . The exercise of the power should be properly guarded, and every proper means adopted in order to prevent abuses and infringement upon the rights of the citizen under the constitution. To this end, we think, the evident purpose and intent of the legislature in requiring that not only the property, but also the person in whose possession it is found, shall be brought before the court, were to acquaint parties who might be interested, with the proceeding, and give opportunity to be heard concerning the disposition that should be ultimately made of the property. The legislature has seen fit to require this form of notice, which they, in their discretion, must have deemed sufficient for the summary purposes and objects of the act, and we do not feel inclined to hold that it is insufficient, or that any other or further notice should be given."

The court, finding that the act concerning search warrants was valid, reversed the judgment of the circuit court, which held to the contrary.

■ ■ We cannot find any provision in the law of Illinois, other than contained in division VIII of the Criminal Code, for an order giving the court jurisdiction over the disposition of gambling paraphernalia. It will be observed that the basis on which our Supreme Court sustained the search and seizure act, as stated in the *Glennon* case, was that there was provision therein for notice to the person in whose possession the paraphernalia was at the time of the seizure. In the instant case the People charged the defendants, including Romano, with a conspiracy to run a gambling house, and the issue was whether they were guilty or not guilty. There was no attempt to obtain a search warrant prior to the seizure of the so-called gambling paraphernalia. The defendant Romano filed a motion to suppress the use of the articles as evidence. He felt reasonably sure that the state's attorney contemplated introducing the alleged gambling paraphernalia as evidence, and he insisted that the State should not be permitted to do this because such contemplated evidence was obtained by an unlawful search, in violation of his constitutional rights. The court sustained him in this contention. It appears to be conceded that the court ruled correctly in suppressing the evidence. That ended the matter. The paraphernalia was not seized on direction of any court or judge. When the court sustained the motion to ''suppress the evidence,'' such ''evidence'' was no longer before the court, and the court not having acquired jurisdiction to decide on the disposition of the articles under the provisions of division VIII of the Criminal Code, lacked jurisdiction to entertain the further motion of Romano to direct the return of the articles to him, or the motion of the state's attorney to direct the destruction of the articles. The jury having found the defendants not guilty and judgment being entered thereon, there was nothing further before the court in that case. It will be noted that par. 342 of ch. 38, defining gambling de-

vices subject to seizure, confiscation and destruction, does not have any provision requiring or authorizing the court to enter an order for such seizure or destruction. Par. 342 of ch. 38 was sustained as constitutional only by coupling it with division VIII of the Criminal Code. In the case of *People v. One Pinball Machine, Owned by Henry Fox*, 316 Ill. App. 161, the deputy who seized the machine in the business district of Rockford testified that he entered the arcade, that he played the machine, and from his testimony the court found that it was a gambling device. The deputy did not have a search warrant. The court pointed out that the offense was committed in the presence of the deputy, that he had the authority to make the arrest without a warrant and that the right of search and seizure is incidental to the right of search and arrest. The court stated further (176): "We know of no reason why an omission to make an arrest in such a case would deprive the officer of the right to seize the contraband machine by which an offense was committed in his presence." The court affirmed the judgment that the machine be destroyed. In that case the deputy witnessed the machine being operated as a gambling device.

■■ In the instant case the court sustained the motion to suppress the evidence on the ground that there was an unlawful search and seizure. The People, not having sought to exercise the machinery of division VIII of the Criminal Code, cannot now seek the aid of the court in an order to destroy the alleged gambling paraphernalia. In the matter of the disposition of the articles, this was not before the court. In our opinion, the court did not have jurisdiction over the disposition of the articles and it should not have entertained that part of the petition of Romano to return the articles to him, or the petition of the state's attorney to destroy the same. The legislature having provided under division VIII of the Criminal Code

the manner in which property, weapons and alleged gambling paraphernalia should be seized and disposed of, we are bound to assume that had it wished to provide for any different or further disposition, it would have done so. Where property or alleged gambling equipment is seized by an unlawful search, there are remedies in the civil courts, such as replevin and detinue, where the rights of citizens and of the People may be determined. It will be observed that par. 4, sec. 2, div. VIII of the Search Warrant Act provides that on a proper complaint a search warrant may issue ''to search for and seize gaming apparatus, or implements used, or kept and provided to be used in unlawful gaming, in any gaming house, or any building, apartment or place resorted to for the purpose of unlawful gaming.'' It would appear that this paragraph contemplates that a search warrant shall issue to search for and seize gaming apparatus, or implements only when used or kept and provided to be used in unlawful gaming in a gaming house or building, apartment or place resorted to for the purpose of unlawful gaming. This paragraph also shows a legislative intent, such as is indicated in par. 342 of ch. 38. The ownership, possession and use of such things are not prohibited by law. Their manufacture is not forbidden. They are treated as ordinary articles of merchandise, may be stored in warehouses, exposed for sale, purchased and used as furniture, or for innocent amusement, and also kept as curiosities and used for purposes other than unlawful gaming. It is the use of such articles as a means of accomplishing unlawful acts, and not the articles themselves that the law condemns. *State v. Derry,* 171 Ind. 18.

Paragraph 342, ch. 38, does not designate what device shall be considered a gambling device *per se.* For instance, it does not say that a roulette wheel or a pack of playing cards shall be considered a gaming device. To be inhibited it must be a machine

or device "for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost." It is only a gambling device when it is a clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost, and if it is such a device or machine, it is subject to seizure, confiscation or destruction by any municipal or other local authority within whose jurisdiction it may be found. If the legislature intended to outlaw certain machines or devices because they were capable of being used as gambling devices, then it would have expressly named such devices. In *Frost v. People,* 193 Ill. 635, the court said (638):

"The judgment being in favor of plaintiff in error except as to the two crap tables, one faro lay-out and one roulette wheel and table, which the evidence showed to be purely gambling apparatus and implements and to have no value or use for any other purpose, the only questions to be considered relate to the alleged errors in seizing them and rendering judgment against them."

In *Bobel v. People,* 173 Ill. 19, the court said (27):

"We are satisfied, as before stated, that the indictment is good, and are also of the opinion that the testimony was properly received. If for no other purpose, this evidence was proper to prove the character and purpose of the machine,—that is, that it was a device upon which money is staked or hazarded, or upon the result of the action of which money is staked, bet, hazarded, won or lost,—in other words, that it was a gambling device."

In the case of *Question Game Co., Inc. v. Ploner,* 273 Ill. App. 187, the court said (191):

"The statute did not contemplate that the articles enumerated were unlawful *per se* as gambling devices, but declares in plain terms that the articles mentioned, or any others not specified, are and become unlawful

if they are devices 'upon which money is staked or hazarded, or into which money is paid or played upon chance, or upon the result of the action of which money or other valuable thing is staked, bet, hazarded, won or lost'.''

In the instant case no evidence was offered or introduced that the articles were machines or devices for the reception of money on chance or upon which money is staked, hazarded, bet, won or lost. The court could not take judicial notice that the articles described are gambling devices. It will be noted that in all the cases cited, evidence was introduced that the articles under discussion were gambling devices.

The People's petition does not charge that the things were kept or used for unlawful gaming or other illegal purposes. The petition did charge that the articles were gambling equipment *per se* upon the action of which money is staked, hazarded, bet, won or lost. The Illinois statute does not define what is gambling equipment *per se* and no evidence was introduced that the articles were gambling equipment upon the action of which money is staked, hazarded, bet, won or lost. It is common knowledge that playing cards, dice, roulette wheels, poker chips, poker cards and poker tables and many other things which may be used in gambling are openly displayed and may be purchased in the well known department and sporting goods stores in Chicago, and that their sale is advertised in the daily press. In arriving at our conclusions we have considered, among others, the recent cases of *People v. Three Roulette Wheels,* 325 Ill. App. 502, and *Weis v. Allman,* 325 Ill. App. 554.

For the reasons stated, the order of the criminal court of Cook county is reversed and the cause remanded with directions to expunge the order directing the restoration of the articles and to strike the petition of the state's attorney.

*Order reversed and cause remanded with directions.*

Kiley and Lupe, JJ., concur.