(No. 33368.—

The People of the State of Illinois, Defendant in Error, vs. Lester Cattaneo, Plaintiff in Error.

*Opinion filed May 20, 1955.*

JOSEPH T. SKINNER, and GEORGE S. SKINNER, both of Princeton, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and CALHOUN W. J. PHELPS, State's Attorney, of Princeton, (FRED G. LEACH, and GEORGE W. SCHWANER, JR., of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

By an information filed in the county court of Bureau County, Lester Cattaneo was charged with keeping a dice table, dice and chips for the purpose of playing at a game for money or other valuable things, in violation of section 3 of an act to prohibit the use of clock, tape, slot or other machines or devices for gambling purposes. (Ill. Rev. Stat. 1953, chap. 38, par. 343.) Defendant moved to suppress as evidence the articles in question, which had been seized without a warrant. The motion was denied; and after a trial before the court without a jury defendant was found guilty and was sentenced to pay a fine of $500. On petition of the State's Attorney the court also entered an order for destruction of the articles. The judgment and order were affirmed by the Appellate Court (*People* v. *Cattaneo,* 2 Ill. App. 2d 429,) and defendant has sued a writ of error out of this court to review the judgment of the Appellate Court.

The evidence discloses that defendant operated a tavern located in Bureau County. On August 25, 1953, at 11:30 P.M. the sheriff of the county and two of his deputies looked through a window of the tavern and saw what is commonly called a crap table, together with a number of chips, dice and a croupier stick. The tavern was open for business at the time, but the only persons present were the defendant, his wife and a man named Klein, who was wearing a green apron and holding a stick. There was no evidence of any gambling taking place. The three officers

thereupon entered the tavern and took possession of the table and the other articles mentioned. A metal box with a slot in the top was fastened underneath the table so that money could be placed from the table directly into it. The box contained $151. In addition to ordering a destruction of the property the court ordered this money confiscated and paid over to the State's Attorney.

Defendant contends that the seized articles do not constitute gambling devices *per se,* as defined in section 2 of the act, and that the county court therefore erred in refusing to suppress them as evidence, in ordering their destruction, and in finding that their possession constituted a violation of section 3. It is further urged that the order for destruction was improper because the articles were taken without a search warrant.

Section 3 of the act prescribes a penalty for every person "in possession of any premises upon which any gambling device may be located and every person in the use, operation, lease or other possession of the same." (Ill. Rev. Stat. 1953, chap. 38, par. 343.) Section 2 of the act, which contains the definition of "gambling device," provides, in so far as material, as follows: "Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found." (Ill. Rev. Stat. 1953, chap. 38, par. 342.) It is clear that if the dice table and other paraphernalia taken constitute such a gambling device as is described in the statute, their seizure, forfeiture and destruction do not violate any constitutional provision. (*People* v. *One Device,* 410 Ill. 318.) The seizure occurred at a time when the tavern was open and accessible to the public, and the articles were in plain view of the officers. There was no

search involved. A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. (*People* v. *Marvin,* 358 Ill. 426.) The controlling issue in this case, therefore, is whether the seized articles constitute a gambling device within the meaning of section 2.

In *Frost* v. *People,* 193 Ill. 635, a warrant was issued for the search of certain premises wherein gaming implements and apparatus were alleged to be concealed. The warrant was returned by the sheriff, executed by seizing two crap tables and a number of other articles. Frost petitioned for return of the property, claiming it was not used for gambling at the time of the seizure but was stored and not in condition for use. The court found, however, that the tables were gambling devices having no value or use for any other purpose, and ordered them condemned and destroyed. In affirming the judgment this court observed: "The legislature have determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provision." In *People* v. *One Device,* 410 Ill. 318, we observed that the *Frost case* has been consistently followed by this court, and that devices which are manufactured, made, or kept for gambling purposes and have no potential for lawful use, are gambling devices *per se.*

In the case at bar, a detailed description of the table is contained in the testimony of the sheriff and one of his deputies, and photographs have been incorporated into the record by stipulation of the parties. Defendant does not dispute the People's evidence that the table is a "crap table," and in fact he so designates it in his brief here. In Webster's New International Dictionary, Second Edi-

tion, "craps" is defined as "a gambling game played with two dice;" and "crap table" is defined as "A high table, for playing craps, with a raised margin against which the dice must be thrown." A "crap table," as commonly known and as depicted by the photograph of the subject table introduced into evidence by stipulation of the parties here, is covered with cloth upon which sections have been marked off by lines, the sections being numbered or containing numbers showing the "odds," or being marked by such terms as "field," "pass," "no pass," and "come." In playing the game the players place their money or chips upon the section they choose and win or lose according to the relation between their chosen section and the numbers on the top of the rolled dice. Bets must be made, the dice must be rolled, and the players must win or lose to constitute "shooting craps." Consequently, a device admitted to be a "crap table" is admitted to be a device upon which bets are made and the players win or lose by the chance roll of the dice.

We think the evidence fully justified the conclusion of the county and Appellate courts that the paraphernalia in question had no value or use for any purpose other than that of gambling and that they constitute gambling devices *per se*. The table bore the markings used in "shooting craps." Underneath a slot in the top was a box to receive money pushed through the slot, and this box when found by the officers contained $151. The construction and appearance of the table clearly shows it to be a "device" to "receive money on chance," within the terms and intent of the statute. We can perceive no practical use to which the design and construction of this table are adapted, other than that of gambling, and none has been suggested by defendant.

Defendant has failed to show any error in the proceedings below, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*