The People of the State of Illinois, Plaintiff-Appellant, v. One Machine Known as "Circus Days," et al., and H & H Music Company, an Illinois Corporation, One Machine Known as "Circus Days" and Fraternal Order of Eagles, Moline Aerie #1112, a Fraternal Organization, and One Machine Known as "Circus Days" and The Moline Turners Society, Incorporated, an Illinois Corporation, Defendants-Appellees.

Gen. No. 11,327.

Second District, Second Division.

January 5, 1960.

Released for publication January 22, 1960.

Hon. Bernard J. Moran, State's Attorney of Rock Island county (Peter H. Lousberg, Assistant State's Attorney, of counsel) for plaintiff-appellant.

Winstein and Rimmerman, of Rock Island (Stewart R. Winstein and Harrison H. Kavensky, of counsel) for defendants-appellees.

JUSTICE WRIGHT delivered the opinion of the court.

This action was brought to obtain an order for the destruction of certain coin-in-the-slot mechanical devices on the grounds that they were gambling devices per se. The three petitions which were filed were consolidated by stipulation, approved by the presiding judge. The court heard the consolidated causes and upon a finding that these mechanical devices were not gambling devices per se entered judgment denying the petitions. This is an appeal from that judgment.

Six mechanical devices were seized by Herbert M. Lowry, Administrative Assistant to the State's Attorney, and two police officers, on the ground that they were gambling devices per se. Four machines were seized at H & H Music Company, Moline, Illinois, where they were to have been repaired. The numbers on three of the machines designated Circus Days were

573, 624 and 786, and the number on one machine designated County Fair was 442. One machine was seized at Fraternal Order of Eagles, Moline Aerie #1222, Moline, Illinois, designated "Circus Days" but had no visible number. The sixth machine was seized at Moline Turners Society, Incorporated, Moline, Illinois, machine number 805, which was designated "Circus Days." Three petitions were filed asking for an order to destroy the machines. These three petitions were consolidated for hearing. At the trial, all machines were demonstrated to the trial court and one of them designated "Circus Days" was demonstrated to this court. Those seized at H & H Music Company were not in proper working order. Machines number 805 and 442 were demonstrated in detail, at the trial.

All of these machines were designed to operate in the same way (though the physical dimensions of "County Fair," machine number 442 differs from the other machines). The machines are of wooden construction. The face of the machine has a slanting glass panel. The upper portion of the glass panel contains a score count register, a coin slot for insertion of a dime and a display of winning combinations of circus animals with the number of replays for each winning combination. The remainder of the glass panel contains five horizontal rows of animals, each row consisting of three columns. Each column has a figure of a circus animal. The machines are marked "For Amusement Only." There are no pay-out tubes on the machines.

The machines are electrically operated. They are activated by the turn of a knob on the front of the machine. Once the play is started the player has no control over the device. When play is started lights flicker behind the figures of the various animals in the three columned, five horizontal rows. The flickering stops, in consecutive order from left to right, so that

482

one animal in each of the three columns is illuminated. If the illuminated figures constitute a winning combination additional games for replay are scored on the play counter or register. This score counter or register automatically adds and subtracts the number of plays on the machine.

The flickering lights are controlled by disc-type rotary switches fixed upon a common shaft. Each time the disc contacts a button connected to a bulb, that bulb illuminates one of the animals on the glass plate. The disc controlling the left most column of animals stops first, then the center column and finally the third column. The animals which finally remain lit in each of the three columns are the combination which determines if the player has won any free games.

Before the activating knob will cause the machine to operate, there must be at least one game on the game counter or register. This game may be placed upon the game counter in one of two ways. The player can put the game on the game counter by inserting a dime in the appropriate slot. Each dime inserted will put another game on the machine. Also, on the left side of the machine is a lock-switch which is operated by the insertion of a key. By inserting a key and turning the lock, a switch on the inside of the machine is tripped and a game is registered on the game counter. Any number of games may be placed on the machine by this method.

If a player leaves any games on the game counter or register, there is a switch on the right side of the machine, which when turned off and again turned on, will automatically erase the games from the game counter. As an example, if the game counter shows zero, zero, five (five games) and this switch is turned off and then on, the game counter will then go automatically to zero, zero, zero (no games).

In addition to the game counter or register on the face of the machine, there are two registers or counters on the inside of the machine. The first of these registers keeps a record of how many games are placed on the machine by the key-lock-switch method described above. Thus, if the key is turned five times, this counter will register five numbers. The second counter or register on the inside operates only when games have been left on the game register and are erased by turning the switch on the right of the machine off and then on again, as described above. Thus, if the game counter reads zero, zero, five and the switch is turned off and then on the game register goes to zero, zero, zero, taking five games off the machine. The counter or register on the inside of the machine, connected to this erasing switch, will record five numbers corresponding to the number of games erased from the game counter or register. All of the above evidence was offered in behalf of the People and the defendants offered no evidence of any nature.

Plaintiffs contend that because of the particular design of these machines, with their similarity to slot machines, and because of the system of counters or registers, these machines have no practical use except for use as gambling devices under Sec. 2 of the Gambling Device Act; and that these machines are therefore gambling devices per se and contraband and should have been ordered destroyed. It is defendants' position that the defendants' devices are not gambling devices per se; that since the devices are not gambling devices per se, plaintiff must prove the device was one upon the action of which money is staked, hazarded, bet, won or lost.

This action was brought under Section 2 of the Gambling Device Act (Ill. Rev. Stat., chap. 38, pars. 341–343) which was enacted by the Legislature for the stated purpose of prohibiting the use of machines or

devices for gambling purposes. A gambling device is defined as follows:

"Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found. A coin-in-the-slot-operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player and which returns to the player thereof no coins, tokens or merchandise shall not be considered to be a gambling device within the meaning of this Act and any right of replay so obtained shall not represent a valuable thing within the meaning of this Act."

The first sentence of the above statute was enacted in 1895 (Laws of 1895, p. 156) before the existence of modern day devices and machines, and the second sentence was added by the Legislature in 1953 (Laws of 1953, p. 929) apparently to override the opinion of People v. One Pinball Mach. Owned by Henry Fox, 316 Ill. App. 161, 44 N.E.2d 950, Petition for Leave to Appeal Denied, 321 Ill. App. XIII, wherein a pinball machine was held to be a gambling device within the definition of the existing statute. The Illinois Supreme Court has construed the Gambling Device Act as prohibiting machines or devices in connection with which money is staked, hazarded, bet, won or lost, such as slot machines, Bobel v. People, 173 Ill. 19, 50 N. E. 322; People v. One Device Known as a "Joker" or "Slotless" Slot Mach., 410 Ill. 318, 102 N.E.2d 122,

and crap tables, Frost v. People, 193 Ill. 635, 61 N. E. 1054; People v. Cattaneo, 6 Ill.2d 122, 126 N.E.2d 692.

In 1957, our Supreme Court in People v. One Mechanical Device, 11 Ill.2d 151, 142 N.E.2d 98, held that a coin-operated pinball machine, which did not pay out money but only additional free games, and which was so constructed as to make the result of its operation depend, in part, upon the skill of the player, was not a gambling device within Section 2 of the Gambling Device Act and that a free play is neither money, the equivalent of money, nor a valuable thing.

 The nature, object and purpose for which a device is designed must necessarily determine if it is a gambling device per se. The proceeding by which a device is determined to be a gambling device is in rem and the device itself is the defendant before the court. People v. Moore, 410 Ill. 241, 102 N.E.2d 146; People v. One Pinball Machine, 20 Ill.App.2d 515, 156 N.E.2d 279; People v. One Pinball Mach. Owned by Henry Fox, 316 Ill. App. 161, 44 N.E.2d 950. The construction and operation of the device is so germane to the issues involved that the trial courts and courts of review permit the devices to be demonstrated before them. People v. One Mechanical Device, supra, People v. One Device known as "Joker" or "Slotless" Slot Mach. Bearing Serial No. 190284, 346 Ill. App. 562, 105 N.E.2d 769. To prove that a machine or device is a gambling device per se, it is not a prerequisite to show that it was in fact used for gambling. Bobel v. People, supra, Frost v. People, supra, People v. One Device known as "Joker," supra, People v. Cattaneo, supra.

The devices now under consideration by us cannot be said to be in the nature of a slot machine for no money comes out or is ejected from the machine to the player. These devices are not in the nature of a pinball machine as was the device before the court in

486

People v. One Mechanical Device, supra, because they entail no skill of the player at all. It is not contended by the defendants that these devices require any skill of the player and one of the devices has been demonstrated to this court and it is conclusive that no skill is involved in the operation of the devices here in question. The devices are certainly not in the category of a crap table or roulette wheel. For these devices to fall within the terms of the second sentence of section 2 of the Gambling Device Act as being exempt as a game of amusement, the following requirements must be met: (1) a coin-in-the-slot-operated mechanical device, (2) played for amusement, (3) which rewards the player with the right to replay such mechanical device, (4) a device so constructed or devised as to make such result of its operation depend, in part, upon the skill of the player and, (5) which returns to the player thereof no coins, tokens or merchandise. There appears to be no dispute that the devices in question fulfil conditions (1), (3) and (5). It is likewise clear that the devices do not meet condition (4). Of course, whether or not the devices meet requirement (2) is one of the ultimate issues. We think that the second sentence of section 2 of the Gambling Device Act having been enacted upon the heels of People v. One Pinball Machine, supra, wherein a pinball machine was held to be a gambling device within the first sentence of the Gambling Device Act, was designed to exempt pinball machines and other machines of a similar nature where the results of the machine depend, in part, upon the skill of the player. It is our opinion that the second sentence exempting certain amusement games from the scope of the act has no application to the devices now before us and that the devices do not qualify under the requirements of the second sentence of the Act.

487

We, therefore, must necessarily turn our attention to the first sentence of the Gambling Device Act to determine whether or not the devices fall within the category of a machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost. There are no other cases in Illinois which have passed upon the nature, object and purpose of the particular type of devices now before us and to that extent this is a case of first impression in this state.

The devices are not dependent upon the skill of the player in any sense of the word. To operate the device, one need only to put a dime in the slot and the device can be played by simply turning the handle. The position of the handle has no control over the operation of the device except to actuate the complex electrical circuits which in turn actuates the various discs, lights and switches. The player is totally at the mercy of the electric power and electric connections within the device. When play is started lights flicker behind the figures of the various animals in the three columned, five horizontal rows. The flickering stops, in consecutive order from left to right, so that one animal in each of the three columns is illuminated. We fail to see where such flickering of lights and animals would be amusing to anyone. The devices now before us differ greatly from a pinball machine because in the latter there is a slight degree of skill required in the play, whereas, in the former there is absolutely none. We are inclined to agree with counsel for the People that the operation of these machines, even their physical appearance, immediately conjures up the image of the "old time" slot machine. The revolving disc, pictures of animals and electric operation of these machines have replaced the revolving drum, the fruit pictures and the mechanical spring operation of slot machines but notwithstanding these differences the similarities remain inescapable.

488

Concealed on the inside of these devices and not visible to the player are two registers or counters, hereinafter called the first and second concealed counters. The first concealed counter on the inside of the device operates only when games are placed on the game counter on the face of the machine by using the key-lock method. Thus, if the key is turned five times, this first concealed counter will register five numbers. The second concealed counter operates only when games are removed from the game counter on the face of the machine by turning the side switch off and on again. Thus, if the game counter on the face of the machine has five games showing, and the side switch is turned off and then on, the game counter on the face of the machine automatically goes to zero games while the second concealed counter on the inside of the device records the five games removed from the game counter on the face of the device. If a player hits a winning combination the free games awarded may be erased from the game counter on the face of the machine by the switch, the games so erased being automatically recorded on the second concealed counter. Thus, if the player receives a payoff, the machine operator knows exactly what the payoff was from the concealed counters. The person in whose establishment the device is operated can make an accurate settlement with the owner of the device.

There is no reasonable explanation for the presence of the two counter systems concealed within the devices. It is not the duty of the defendants to offer an explanation for the presence of the counters but it is significant that they did not do so. If these devices were games of amusement we can conceive no necessity for the two counter systems for the reason that the dimes or coins in the machine would indicate the number of games played and the amount of money received by the particular machines and it would be immaterial whether or not a player received

a free game or games. If this were a game of amusement all that would be necessary or vital for an accounting between the owner and the lessee of the device would be to count the money received in the box in the machine. In this respect, it is well to note the prudent observation of our Supreme Court in People v. Cattaneo, supra, wherein a crap table, chips and dice were the subject of a petition for an order of destruction. The table itself did not pay out any money to the players and the court in observing the nature, object and purpose of the crap table, chips and dice stated at page 126 of 6 Ill.2d and at pages 694–695 of 126 N.E.2d:

"We think the evidence fully justified the conclusion of the county and Appellate courts that the paraphernalia in question had no value or use for any purpose other than that of gambling and that they constitute gambling devices per se. The table bore the markings used in 'shooting craps.' Underneath a slot in the top was a box to receive money pushed through the slot, and this box when found by the officers contained $151. The construction and appearance of the table clearly shows it to be a 'device' to 'receive money on chance,' within the terms and intent of the statute. *We can perceive no practical use to which the design and construction of this table are adapted, other than that of gambling, and none has been suggested by defendant.*" (Emphasis added)

Counsel for the defendants argue that if we determine that the devices before us are gambling devices per se, then, a deck of cards susceptible of being used for playing poker could be seized in every drug store in this State. This argument is without merit as the stated purpose of the Gambling Device Act is the prohibition of the use of machines or devices for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost. A deck of cards is not included in section 2 of the Act.

490

■ The law is not required to be blind to, and ineffectual against, the ceaseless efforts and ingenuity of persons to circumvent the Gambling Device Act. When we ascend to the bench we do not discard the ordinary common sense, observations, experiences and intelligence of common men and we cannot be so naive as to conclude that the devices which have been demonstrated to us are games of amusement. It is our opinion that the devices before us are exactly the type of machines or devices prohibited by section 2 of the Gambling Device Act for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost and declared by said section to be a gambling device. It is obvious that the nature, object and purpose of the devices are for gambling and we cannot conceive of any practical use for said devices other than that of gambling.

We are of the opinion that the Circuit Court of Rock Island County was in error in failing to order the destruction of the devices. Therefore, the order and judgment of the Circuit Court of Rock Island County is reversed.

Judgment reversed.

SOLFISBURG, P. J. and CROW, J., concur.