PLAYBOY HOTEL OF CHICAGO, INC., d/b/a Chicago Playboy Club, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 85—1465

Opinion filed September 22, 1986.

Michael A. Moses, Morton Siegel, Richard G. Schoenstadt, and James L. Webster, all of Chicago, for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal raises the question of whether the circuit court correctly held that plaintiff's blackjack tables are gambling devices prohibited by Illinois law, and therefore properly dismissed plaintiff's complaint for failure to state a claim for the relief sought.

In reviewing an order of a trial court dismissing a complaint for failure to state a cause of action, this court must accept as true all well-pleaded facts in the complaint, and all reasonable inferences flowing therefrom. (*Samuels v. Checker Taxi Co.* (1978), 65 Ill. App. 3d 63, 382 N.E.2d 424.) Accordingly, a review of the facts contained in plaintiff's complaint is required.

On December 4, 1984, plaintiff, Playboy Hotel of Chicago, Inc., doing business as a private club under the trade name "Chicago Playboy Club," presented a written petition to city of Chicago officials seeking approval to conduct a promotion upon its premises involving the playing of the card game commonly referred to as "blackjack." According to plaintiff's proposal, a small area of its club on 1960 N. Lincoln Park West in Chicago, would be set aside for use by a limited number of its patrons for 45-minute periods during which time they would play blackjack at "blackjack tables" with professionally trained dealers. Each participant, upon entry into this area, would be issued a specific amount of "chips" or "script," at no charge, with which to play and would be required to turn in the script when the time limit for playing had expired. No additional script would be made available for purchase, no compensation, article, thing of value or any other consideration would be awarded to players, and no money would be allowed on the playing tables. Plaintiff planned to monitor these activities to assure that no gambling or wagering among patrons occurred.

Plaintiff's proposal was ultimately reviewed by members of the corporation counsel, who issued an opinion on March 28, 1985, regarding the legal considerations of the promotion. The opinion stated

that the tables to be utilized by plaintiff would constitute illegal "gambling devices" within the definition of section 28—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 28—2(a)), and would violate the Municipal Code of Chicago. The counsel therefore concluded that use of the tables should be prohibited.

Plaintiff subsequently filed a two-count complaint against the city of Chicago, its police department, and the following city of Chicago officials: mayor and liquor control commissioner Harold Washington, police superintendent Fred Rice, and 18th District commander Charles Swaner. In count I of its complaint, plaintiff alleges that the conducting of its promotion would not constitute the offense of "gambling" through the use of a "gambling device" within the provisions of sections 28—1(a)(3) and 28—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, pars. 28—1(a)(3), 28—2(a)), and chapter 191 of the Municipal Code of Chicago. Plaintiff further alleges in count I that a contrary construction of the antigambling statute would deprive plaintiff and its employees of their rights to due process and equal protection under the law. Count II of plaintiff's complaint incorporates by reference the allegations contained in count I, and requests declaratory relief. Plaintiff also seeks injunctive relief against the institution of any criminal, civil or license proceedings arising out of its possession and use of the blackjack tables, and against any interference with such possession and use.

Defendants filed a motion to dismiss plaintiff's action pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). In response, plaintiff moved to strike and dismiss defendant's motion and filed a cross-motion for summary judgment. On May 3, 1985, the trial court entered an order granting defendant's motion to dismiss, adopting the motion and its supporting memorandum as authority for its ruling that plaintiff's blackjack tables, as a matter of law, constitute illegal "gambling devices" within section 28—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 28—2(a)). For the following reasons, we affirm.

The Criminal Code of 1961 provides that a person commits the offense of gambling when he "[o]perates, keeps, owns, [or] uses *** any gambling device." (Ill. Rev. Stat. 1983, ch. 38, par. 28—1(a)(3).) A "gambling device" is defined as:

> "[A]ny clock, tape machine, slot machine or other machines or device for the reception of money or other thing of value on chance or skill or upon the action of which money or other thing of value is staked, hazarded, bet, won or lost; or any mechanism, furniture, fixture, equipment or other device de-

signed primarily for use in a gambling place." (Ill. Rev. Stat. 1983, ch. 38, par. 28–2(a).)

Since no "money or other thing of value [will be] staked, hazarded, bet, won or lost" at plaintiff's blackjack tables, the issue before this court is whether the tables are "designed primarily for use in a gambling place" and therefore constitute "gambling devices" within the meaning of section 28–2(a).

■ Plaintiff reframes this issue by alleging in count I of its complaint that because its blackjack tables will not be used for gambling purposes since no consideration is involved in its promotion, they are not gambling devices *per se.* To support this allegation, plaintiff relies on section 28–5(a) of the Criminal Code of 1961, which provides that "[e]very gambling device which is incapable of lawful use is contraband and shall be subject to seizure, confiscation and destruction." (Ill. Rev. Stat. 1983, ch. 38, par. 28–5(a).) Based on this provision, plaintiff maintains that its tables are not "incapable of lawful use," and consequently, are not contraband. We find plaintiff's contention to be without merit.

We initially note that section 28–5(a) is not controlling in the instant case because it pertains solely to the seizure of contraband, not to what constitutes a gambling device under section 28–2(a). Moreover, section 28–1(a)(3) specifically states that one need only "own" a prohibited device to commit the offense of gambling. Plaintiff's position is further refuted by existing Illinois case law, the language of section 28–2(a), and the purpose of the antigambling statute's enactment.

■ In proving whether an item is a prohibited gambling device, "it is not a prerequisite to show that it was in fact used for gambling." (*People v. One Machine Known as "Circus Days"* (1960), 23 Ill. App. 2d 480, 486, 163 N.E.2d 223.) Rather, "[t]he nature, object and purpose for which a device is designed must necessarily determine if it is a gambling device per se." (23 Ill. App. 2d 480, 486, 163 N.E.2d 223; see also *Almy Manufacturing Co. v. City of Chicago* (1916), 202 Ill. App. 240, 244.) Thus, the device itself has been considered to be the defendant before the court. *People v. One Machine Known as "Circus Days"* (1960), 23 Ill. App. 2d 480, 486, 163 N.E.2d 223.

The supreme court, in *People v. Cattaneo* (1955), 6 Ill. 2d 122, 126 N.E.2d 692, applied these principles of law in determining that a crap table, an object similar in nature to plaintiff's blackjack tables, was a gambling device *per se* even though it was not in use when seized. The court reasoned that the table in question was covered with cloth,

bore the markings used in "shooting craps," and as a "crap table," was admitted to be a device upon which players win or lose by the chance roll of the dice. (6 Ill. 2d 122, 126, 126 N.E.2d 692.) Similarly, in *Frost v. People* (1901), 193 Ill. 635, 61 N.E. 1054, the evidence revealed that crap tables, among other articles seized from the defendant's building were "purely gambling apparatus and implements" although they had been stored in a room, "knocked down," and in no condition for use.

■ After considering the character and construction of the blackjack tables before this court, we believe that they are "designed primarily for use in a gambling place" despite the rules of plaintiff's promotion. The tables in issue are semicircular, covered with felt, bear blackjack markings, and are like those used in Las Vegas casinos. Plaintiff does not dispute that its tables are "blackjack tables" and in fact, designates them as such in its complaint. The fact that plaintiff's tables will specifically state on their surface that they are not to be used for gambling purposes does not remove them from the purview of the statute. See *People v. One Machine Known as "Circus Days"* (1960), 23 Ill. App. 2d 480, 163 N.E.2d 223 (coin-in-the-slot machines marked "For Amusement Only" were held to constitute gambling devices *per se*).

■ Plaintiff attempts to distinguish *Cattaneo* and other decisions in which devices were held to be gambling devices *per se* on the ground that in those cases, a finding was made that the items in question had no value or use for any other purpose than gambling, whereas, in this case, the blackjack tables have a lawful use. The cases plaintiff refers to, however, were either decided pursuant to section 28—5 of the Criminal Code of 1961 because a seizure had taken place, or were decided under statutes which did not include the second category of gambling devices currently found in section 28—2(a) of the Criminal Code. Unlike the courts in those decisions, we need not determine that plaintiff's blackjack tables are incapable of lawful use or have no other purpose than for gambling since section 28—2(a), as amended in 1961, makes clear that devices need only be "designed primarily for use in a gambling place" to be prohibited. (Ill. Rev. Stat. 1961, ch. 38, par. 28—2.) Since the legislature opted to use the word "primarily" rather than the exclusive word "only," the fact that plaintiff's tables may be capable of some legitimate use does not render them lawful.

Aside from the language of section 28—2(a), the evil to be remedied by the antigambling statute further refutes plaintiff's claim that its tables must actually be used for gambling purposes to be barred.

Because the legislature has determined that gambling implements and apparatus are "pernicious and dangerous to the public welfare" (*People v. Moore* (1951), 410 Ill. 241, 247, 102 N.E.2d 146), mere possession of gambling devices, without proof of their use in gambling, is viewed disfavorably:

> "[T]he object of this statute was 'not only to suppress the use of these gambling devices or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them, whether for gambling or not, \*\*\*. The purpose of the statute seems to be not only to prohibit the mere use, but to suppress such devices altogether \*\*\*.' " *People v. McDonald* (1962), 26 Ill. 2d 325, 329, 186 N.E.2d 303, quoting *Bobel v. People* (1898), 173 Ill. 19, 28, 50 N.E. 322.

■ In the face of this strong legislative intent to prohibit gambling devices, plaintiff cites *Yasin v. Byrne* (1984), 121 Ill. App. 3d 167, 459 N.E.2d 320, to support its contention that its blackjack tables are permissible. In *Yasin*, the court held that the plaintiff's video machines which simulated the card games of blackjack and poker fell within the statutory exception to the definition of gambling devices carved out for "coin-in-the-slot" operated devices. Not only is the instant case distinguishable from *Yasin* because the tables here do not meet the criteria of the statutory exception, but also because the *Yasin* court, in reaching its result, stressed that the video games could not be altered or adapted for gambling use, and consequently, were not well suited for use in gambling enterprises. In the present case, however, plaintiff has practically conceded that its tables are "designed primarily for use in a gambling place" by virtue of its detailed description of the promotion, the object of which is to simulate an actual gambling experience.

Plaintiff also cites *People v. Two Roulette Wheels & Tables* (1945), 326 Ill. App. 143, 61 N.E.2d 277, to buttress its allegation that its blackjack tables are like those commonly sold to consumers in the State of Illinois and the city of Chicago for home and recreational use. In *Two Roulette Wheels*, the court stated that "playing cards, dice, roulette wheels, poker chips, poker cards and poker tables and many other things which may be used in gambling" are sold at department and sporting goods stores in Chicago, but there is no mention of where and under what circumstances the particular blackjack tables in issue here may be purchased. (326 Ill. App. 143, 162, 61 N.E.2d 277.) Moreover, plaintiff's tables are unlike those items referred to in *Two Roulette Wheels* in that they are not conducive to home use. Thus, plaintiff has failed to present any facts to support this allegation

which merely represents a conclusory opinion, and as such, is an insufficient basis upon which to state a cause of action. See *Haas v. Mid-America Fire & Marine Insurance Co.* (1976), 35 Ill. App. 3d 993, 998, 343 N.E.2d 36 (pleader must allege facts, not conclusions, to support a cause of action).

■ As the court observed in *People v. One Machine Known as "Circus Days"* (1960), 23 Ill. App. 2d 480, 491, 163 N.E.2d 223:

> "The law is not required to be blind to, and ineffectual against, the ceaseless efforts and ingenuity of persons to circumvent the Gambling Device Act. When we ascend to the bench we do not discard the ordinary common sense, observations, experiences and intelligence of common men and we cannot be so naive as to conclude that the devices which have been demonstrated to us are games of amusement."

Similarly, while we recognize that plaintiff's blackjack tables are capable of innocent usage, our common sense dictates that such usage is not the one for which they were "designed primarily." Accordingly, we conclude that the trial court properly determined that the tables constitute gambling devices as a matter of law.

■ Plaintiff further alleges in count I of its complaint that by interpreting and applying the provisions of the Criminal Code of 1961 so as to prohibit the possession of its blackjack tables, it will be denied its rights to due process and equal protection under the fourteenth amendment of the United States Constitution. While plaintiff's due process claim is vaguely stated in its complaint, plaintiff asserts in its brief that the legal opinion of the corporation counsel, in and of itself, constitutes a due process violation because it is contrary to Illinois law. Given our finding above that plaintiff's tables fall within the statutory definition of prohibited gambling devices, plaintiff's due process claim must fail.

■ We additionally reject plaintiff's equal protection claim which is premised on the allegation that cards, dice, backgammon boards, card tables and other furniture are permitted in various restaurants, taverns and private clubs throughout the State of Illinois and the city of Chicago. The equal protection clause "does not proscribe the treatment of different classes of persons in different ways; it requires only equal treatment of persons similarly situated." (*Yellow Cab Co. v. Jones* (1985), 108 Ill. 2d 330, 341, 483 N.E.2d 1278.) Plaintiff has alleged no facts in its complaint to substantiate that others "similarly situated" are treated differently. The fact that equipment other than blackjack tables may be legally utilized in other restaurants or clubs throughout Illinois does not support plaintiff's claim of a constitu-

tional deprivation. Furthermore, plaintiff's claim in its brief that a promotion similar to the one it proposes has been approved in Rosement is unpersuasive since we need only consider whether city of Chicago officials have properly interpreted the applicable statutes.

In view of our disposition of the above issues, we need not determine whether the injunctive and declaratory relief sought in count II is appropriate.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and O'CONNOR, J., concur.